

## Fourth Court of Appeals
### San Antonio, Texas

## OPINION

No. 04-12-00311-CV

**IN THE INTEREST OF J.M.**

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-PA-01587
Honorable Dick Alcala[1], Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  November 9, 2012

REVERSED AND REMANDED

Jose Martinez appeals the trial court's final order terminating the parent-child relationship between him and J.M.  Martinez argues he was not properly served with citation, the evidence is factually insufficient to support the termination order, and he received ineffective assistance of counsel.  We reverse the order terminating Martinez's parental rights and remand the cause for a new trial.

### FACTUAL AND PROCEDURAL HISTORY

On June 21, 2011, the Texas Department of Family and Protective Services ("the Department") filed its original petition in this case and sought emergency removal of two children from their mother.  Only one of the children, J.M., who was two and one-half years old

---

[1] Senior Judge, sitting by assignment

when the petition was filed, is the subject of this appeal. The petition asserted J.M.'s alleged father was "Julian Martinez," whose location was unknown. The petition sought a determination of parentage and an order terminating "Julian Martinez's" parental rights. On the same date, the trial court signed an order authorizing service of citation on "Julian Martinez" by posting a copy of the citation at the courthouse door. *See* TEX. FAM. CODE ANN. § 102.010 (West 2008); TEX. R. CIV. P. 109a. The appellate record does not contain a motion for substitute service on appellant Jose Martinez or on "Julian Martinez," nor does it contain a return of service on either Jose Martinez or Julian Martinez. On the same date, the trial court also appointed Mark Ferguson as attorney ad litem to represent Martinez. *See* TEX. FAM. CODE ANN. § 107.013(a)(3) (West Supp. 2012) (requiring appointment of attorney ad litem for alleged father who has not registered with paternity registry and whose identity or location is unknown).

An adversary hearing was held in July, following removal of the children. The reporter's record of the hearing reflects that attorney Mark Ferguson did not appear, and the clerk and bailiff told the court on the record that they had not seen or heard from him. The record of the hearing also reflects that counsel for the Department had learned the correct name of J.M.'s alleged father is Jose Martinez. The Department subsequently filed a Certificate of Paternity Registry Search from the bureau of vital statistics indicating that no man had registered an intent to claim paternity of J.M.

The next status conference was held August 17, 2011. The Department's legal case worker testified she had learned from the mother that J.M.'s father had been deported to Mexico. The worker testified she had contacted the consulate in an effort to locate him. Attorney Ferguson did not enter an appearance at the hearing, and counsel for the Department, the mother, and the children advised the court they had not heard from him.

The Department's legal case worker filed a permanency plan and permanency progress report, dated December 5, 2011, in advance of the first permanency hearing. The report correctly identifies appellant Jose Martinez as J.M.'s father and states he had been located in San Luis Potosi, Mexico. The case worker stated she was in contact with Martinez through the Mexican Consulate. She stated she had sent a copy of the service plan and other necessary documentation to the Consulate and was working closely with the Consulate so they could assist Martinez in completing the plan.

The report further stated that Martinez was maintaining contact with the caseworker through the Consulate. The case worker reported Martinez was "somewhat engaged" in his service plan, but that it was difficult for her to judge Martinez's progress because of his location and because her only contact with Martinez was through the Consulate. The case worker reported that Martinez was engaged in therapy, had provided proof of employment and housing, and had tested negative on one drug test. However, he had not completed parenting classes, and due to his residency, had not been able to participate in visits with his child. The report stated the Department was seeking to terminate the mother's parental rights, but did not state the Department was seeking to terminate Martinez's rights.

The Department announced at the December permanency hearing that it was recommending termination of the rights of the mother and the alleged fathers of all the children in the case based on the lack of progress in the case. The Department's legal case worker testified at the hearing, but she was not asked any questions about Martinez. The trial court noted attorney Ferguson's absence on the record, and the clerk of the court advised the judge that Ferguson had not been heard from.

The Department filed its final pretrial permanency plan and progress report in April 2012. The report identified J.M.'s father as Jose Martinez and stated he had been located in San Luis Potosi, Mexico. The case worker reported that Martinez had continued to keep in contact with her through the Mexican Consulate. He continued to be engaged in therapy and had completed parenting classes and a domestic violence class. Martinez also completed a psychological evaluation, which recommended further psychological services to address issues of lack of autonomy and insecurity to help him develop the personal tools that could enable him to assume the care of his son. The report stated Martinez had not yet engaged in the additional recommended services. The case worker recommended termination of Martinez's rights because of the "not favorable" psychological evaluation and the recommendation of treatment before reunification, the fact he has no bond with the child, and because he had not had any visits throughout the legal case. Attorney Ferguson did not appear at the April 10 permanency hearing, and Ferguson's failure to contact the court was once again placed on the record. The case worker testified about the matters contained in her report.

A trial on the merits before the court was held April 16, 2012. The reporter's record lists appearances by the attorneys for the Department, the mother, and the children. It does not list Ferguson or any other attorney as appearing for Martinez. The attorneys representing the Department, the mother, and the children all announced and indicated they were ready to proceed. The trial court stated, "[i]f there's anyone else here on this case, would you please announce." Ferguson did not announce and nothing in the reporter's record suggests he was present. Martinez did not personally appear.

An affidavit of voluntary relinquishment of the mother's parental rights was tendered to the court, and the Department's case worker Kristin Torres testified. Torres testified that a

search result from the paternity registry had been filed with the court and that Martinez had not taken any formal steps to legitimate his interest in J.M. or to establish paternity. She also answered "yes" to the question whether "each of these fathers or alleged fathers constructively abandoned their children." Torres testified the Department was asking the court to terminate Martinez's rights based on his failure to legitimate and, alternatively on the ground of constructive abandonment. She testified she believed this was in the best interest of the children. No other evidence was presented.

The trial court signed the order of termination the same day. The order and erroneously states Martinez "appeared in person and through his attorney of record MARK FERGUSON and announced ready." The order contains the trial court's findings by clear and convincing evidence that: (1) Martinez either was served with citation or waived service of process; (2) Martinez did not respond by filing an admission of paternity, a counterclaim for paternity, or a request for voluntary paternity to be adjudicated; and (3) Martinez constructively abandoned the child. The court adjudicated Martinez to be J.M.'s father and ordered the parent-child relationship between Martinez and J.M. terminated. The order does not contain a finding that termination of the parent-child relationship is in the best interest of the child and the trial court did not make such a finding orally. The Department was named J.M.'s permanent managing conservator.

On May 15, 2012, new counsel appeared on behalf of Jose Martinez, filing a notice of appeal. Martinez filed a timely motion for extension of time to file the notice of appeal, which we granted. On appeal, Martinez argues the order terminating his parental rights should be reversed because he was not properly served, the evidence is factually insufficient to support the termination order, and because he received ineffective assistance of counsel.

## SERVICE OF CITATION

"Parental rights are 'far more precious than any property right,' and when the State initiates a termination proceeding, 'it seeks not merely to infringe that fundamental liberty interest, but to end it.'" *In re E.R.*, No. 11-0282, 2012 WL 2617604, at \*7 (Tex. July 6, 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). "We carefully scrutinize termination proceedings, and we strictly construe involuntary termination statutes in the parent's favor." *E.R.*, 2012 WL 2617604, at \*7 (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)).

The Department purports to have served appellant by publication pursuant to Texas Rule of Civil Procedure 109a and section 102.010 of the Family Code. The order authorizing substituted service required the citation and petition, which identified the alleged father as "Julian Martinez," be posted at the courthouse door, and ordered the return of service be filed with the papers in the case. In addition, section 102.010(d) of the Family Code requires that a statement of the evidence of service, approved and signed by the court, be filed with the papers in the cause. The appellate record does not contain either the section 102.010(d) statement of evidence or a return of service. When the Department learned appellant's name and his location, more than four months before trial, it did not attempt to serve him by any means, even though he had not waived service or appeared. The record establishes that Martinez did not appear, either personally or through his appointed attorney, in any pleading filed in the cause or at any hearing in the cause.[2]

---

[2] Reporter's records of all hearings in the case relating to J.M. were made part of the appellate record. The only hearing for which no reporter's record was filed was held November 21, 2011. This was an adversary hearing pursuant to section 262.201 of the Family Code, held after the mother of the children gave birth to another child, with a different alleged father, during the pendency of the case. It is apparent from the judge's notes and the temporary order following the hearing that the hearing concerned only the newborn child.

In a direct attack on a judgment rendered without the defendant's appearance, the record must show strict compliance with the rules regarding service of citation. *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994); *Velasco v. Ayala*, 312 S.W.3d 783, 797 (Tex. App.— Houston [1st Dist.] 2009, no pet.); *Williams v. Williams*, 150 S.W.3d 436, 443 (Tex. App.— Austin 2004, pet. denied). "'Strict compliance' means literal compliance with the rules governing issuance, service, and citation." *Velasco*, 312 S.W.3d at 797. Service by publication directed to a party using an incorrect name is not in strict compliance with the rules and does not effect valid service. *Id.*; *see Freeman v. Hawkins*, 77 Tex. 498, 14 S.W. 364, 365 (1890) (holding that intended defendant, served by publication that cited wrong name, and who did not participate in suit was not bound by judgment in suit). Moreover, the record before us does not contain a return of service on "Julian Martinez" or on appellant and does not contain the statement of evidence required by section 102.010(d) of the Family Code. *See Montgomery v. R.E.C. Interest, Inc.* 130 S.W.3d 444, 447 (Tex. App.—Texarkana 2004, no pet.) (reversing judgment because record did not include signed, approved, and filed statement of evidence required by Texas Rule of Civil Procedure 244 when service is by publication and defendant does not appear). We agree with appellant that the record does not show strict compliance with the rules of service and the service was invalid. When judgment is rendered on invalid service of process by publication, a party is generally entitled to a new trial. *In re E.R.*, No. 11-0282, 2012 WL 2617604, *12 (Tex. July 6, 2012).

The Department's brief does not provide any argument that appellant was validly served with process. Instead, it contends the failure to properly serve Martinez is immaterial because the Family Code authorizes the termination of the rights of an alleged father in some

circumstances without any service of citation. While we agree with this statement as a general proposition, those circumstances do not exist in this case.

Section 160.404 of the Family Code authorizes the termination, without notice, of the parental rights of an alleged father who did not timely register with the bureau of vital statistics and who is not entitled to notice under Section 160.402 or 161.002. TEX. FAM. CODE ANN. § 160.404 (West 2008). Section 160.402 concerns men who have registered with the paternity registry, who have commenced paternity proceedings, or have established a parent-child relationship, and does not apply in this case. *See id.* § 160.402. Section 161.002(a) states that the procedural and substantive standards for termination of parental rights, which include valid service of process, apply to the termination of an alleged father's parental rights, except as otherwise provided in that section. *Id.* §161.002(a)[3]. Section 161.002(b) sets out four

---

[3] Section 161.002, entitled "Termination of the Rights of an Alleged Biological Father," provides in its entirety:

(a) Except as otherwise provided by this section, the procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father.

(b) The rights of an alleged father may be terminated if:

(1) after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160;

(2) the child is over one year of age at the time the petition for termination of the parent-child relationship or for adoption is filed, he has not registered with the paternity registry under Chapter 160, and after the exercise of due diligence by the petitioner:
 (A) his identity and location are unknown; or
 (B) his identity is known but he cannot be located;

(3) the child is under one year of age at the time the petition for termination of the parent-child relationship or for adoption is filed and he has not registered with the paternity registry under Chapter 160; or

(4) he has registered with the paternity registry under Chapter 160, but the petitioner's attempt to personally serve citation at the address provided to the registry and at any other address for the alleged father known by the petitioner has been unsuccessful, despite the due diligence of the petitioner.

(c) The termination of the rights of an alleged father under Subsection (b)(2) rendered on or after January 1, 1998, and before January 1, 2008, does not require personal service of citation or citation by publication on the alleged father.

circumstances in which the rights of an alleged father may be terminated without meeting the standards otherwise required for the termination of parental rights. Subsection (b)(1) applies when the alleged father has been validly served with citation, which we have found did not occur in this case. Neither subsection (b)(3) nor (b)(4) apply in this case. *See id.* § 161.002(b)(3)(when child was under one year of age when petition for termination filed); § 161.002(b)(4)(when alleged father registered with the paternity registry but cannot be located for service).

The Department appears to be relying on section 161.002(b)(2) for its argument that Martinez's failure to register authorized termination of his parental rights without service of citation. That subsection, when read in conjunction with 160.002(c-1), authorizes the trial court to terminate an alleged father's parental rights if (1) the child was over one year of age when the petition was filed, (2) the alleged father has not registered with the paternity registry, and (3) the alleged father's identity or location are unknown. *Id.* §161.002(b)(2), (c-1). If those conditions exist, the Department is not required to serve the alleged father, either personally or by

---

(c-1) The termination of the rights of an alleged father under Subsection (b)(2) or (3) rendered on or after January 1, 2008, does not require personal service of citation or citation by publication on the alleged father, and there is no requirement to identify or locate an alleged father who has not registered with the paternity registry under Chapter 160.

(d) The termination of rights of an alleged father under Subsection (b)(4) does not require service of citation by publication on the alleged father.

(e) The court shall not render an order terminating parental rights under Subsection (b)(2) or (3) unless the court receives evidence of a certificate of the results of a search of the paternity registry under Chapter 160 from the bureau of vital statistics indicating that no man has registered the intent to claim paternity.

(f) The court shall not render an order terminating parental rights under Subsection (b)(4) unless the court, after reviewing the petitioner's sworn affidavit describing the petitioner's effort to obtain personal service of citation on the alleged father and considering any evidence submitted by the attorney ad litem for the alleged father, has found that the petitioner exercised due diligence in attempting to obtain service on the alleged father. The order shall contain specific findings regarding the exercise of due diligence of the petitioner.

TEX. FAM. CODE ANN. § 161.002 (West 2008).

publication, and is not required to identify or locate him. *See id.* §161.002(c-1). However, subsection (b)(2) does not authorize an order terminating the parental rights of an alleged father when his identity and location are known to the Department at the time of the final hearing and order. *In re K.W.*, 138 S.W.3d 420, 431 (Tex. App.—Fort Worth 2004, pet. denied); *In re E.A.W.S.*, No. 02-06-00031-CV, 2006 WL 3525367, at *16 (Tex. App.—Fort Worth Dec. 7, 2006, pet. denied)(mem. op.).

The Department relies on *In re R.J.*, No. 04-11-00818-CV, 2012 WL 3195086, at *2 (Tex. App.—San Antonio Aug. 8, 2012, no pet.), and *In re C.M.D.*, 287 S.W.3d 510, 513 (Tex. App.—Houston [14th Dist.] 2009, no pet), for the proposition that an alleged father who has not registered with the paternity registry may have his rights terminated without notice or any service of process. Both cases are materially distinguishable from the case before us. In *R.J.*, this court upheld the termination of the parental rights of two alleged fathers who had not registered and for whom the Department had not diligently searched. 2012 WL 3195086, at *3-*5. However, the alleged fathers in that case were served by publication and their attorney ad litem filed an answer on their behalf, thus waiving any defects in service, and the alleged fathers' whereabouts remained unknown when the order of termination was rendered. *Id.* Thus termination of their rights was authorized under both subsections (b)(1) and (b)(2). In *C.M.D.*, the child was under one year of age when the petition for adoption and termination of the alleged father's rights was filed. 287 S.W.3d at 513. The rights of the alleged father, who had not registered, could therefore be terminated without service, without regard to whether his whereabouts were known, and without any effort to locate him. *See* TEX. FAM. CODE ANN. § 161.002(b)(3), (c-1).

In this case, the record does not support the application of any of the subsections of section 161.002(b) of the Family Code. We conclude that because the record establishes the

Department knew appellant's identity and location and was in contact with him more than four months before the final hearing, and because J.M. was over one year old when the petition was filed, Martinez's rights could not be terminated without valid service or a waiver of service.

## SUFFICIENCY OF THE EVIDENCE

We also agree with Martinez that there is factually insufficient evidence to support the termination of his parental rights. The final order purports to terminate his rights on two grounds: (1) constructive abandonment, pursuant to section 160.001(1)(N) of the Family Code and (2) failure to register with the paternity registry or file an admission of paternity, pursuant to section 160.002(b). As discussed above, the record does not support termination under either 161.002(b)(1) (because there was no valid service of citation) or (b)(2) (because appellant's identity and location were known). Termination for constructive abandonment required not only service or waiver of citation, but also proof by clear and convincing evidence that termination is in the best interest of J.M. and that Martinez constructively abandoned J.M. *See* TEX. FAM. CODE ANN. §161.001(1)(N), (2). The trial court did not make a finding that termination of Martinez's parental rights is in J.M.'s best interest. Additionally, the Department did not present any factual evidence establishing constructive abandonment. The case worker's statement that "each of these fathers or alleged fathers constructively abandoned their children" is too conclusory to amount to any evidence. *See Vazquez v. Vazquez*, 292 S.W.3d 80, 85 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *In re T.W.E.*, 217 S.W.3d 557, 560 (Tex. App.—San Antonio 2006, no pet.).

## CONCLUSION

We hold Martinez was not validly served with citation by publication, the Family Code does not authorize termination of Martinez's rights without service or a waiver of service, and

the evidence is factually insufficient to support the order terminating his parental rights. Because of our disposition of these issues, we need not address whether Martinez's appointed counsel rendered ineffective assistance. We reverse that part of the trial court's Order of Termination that terminates the parent-child relationship between Martinez and J.M. and remand the cause for a new trial on that issue. *See In re J.A.J.*, 243 S.W.3d 611 (Tex. 2007).

Steven C. Hilbig, Justice