# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00573-CV

### N. T., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

## FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
## NO. C2016-0188C, HONORABLE GARY STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

N.T. appeals the trial court's order terminating his parental rights to his children following a bench trial.[1]  N.T. contends that the trial court violated his constitutional due process rights by entering a judgment terminating his parental rights without first acquiring personal jurisdiction over him, without providing him notice of the trial setting, and without appointing him an attorney.  For the reasons that follow, we affirm the trial court's order terminating N.T.'s parental rights.

## BACKGROUND

In January 2016, the Texas Department of Family and Protective Services (the Department) received a referral alleging neglectful supervision of their children by N.T. and the

---

[1]  We use initials to refer to appellant.  *See* Tex. R. App. P. 9.8.

children's mother, stemming from a domestic violence incident between N.T. and the mother. On February 9, 2016, the Department filed a petition seeking termination of the parents' rights. In the petition, the Department requested service on N.T. and the children's mother at the family's home address. The Department was appointed emergency temporary managing conservator of the children, and after one extension, the initial adversary hearing was held on March 8, 2016, at which the Department was appointed temporary managing conservator. In the temporary order following the March 8 hearing the trial court noted that N.T. "was not notified and did not appear" but ordered that N.T. was to comply with the service plan presented by the Department and was to have no visitation with the children until further order of the court. On March 14, 2016, the Department filed a status report in which it listed N.T. as a person "entitled to notice of the hearing," listed only a post office box address for N.T., left blank the spaces by N.T.'s name for "Date of Service" and "Method Service" in the section entitled "Service of Process," and stated that N.T. was "aware of the Department's involvement at this time, but through the Department only and not via citation."

The record reflects that on March 16, 2016, N.T. was personally served with citation and with notice of the status hearing set for March 29, 2016. Following the hearing on March 29, which N.T. did not attend, the trial court signed a status hearing order in which it found that N.T. "although duly and properly notified, did not appear and wholly made default." The trial court also found that N.T. had not reviewed or signed the Department's service plan for him but ordered him to comply with the plan and submit the Child Placement Resources Form to the Department. On April 5, 2016, the trial court ordered that the children were to be placed with the mother and that N.T. was to have no contact with the children until he appeared in court. In June 2016, the

2

Department filed a status report that again listed N.T. as a person "entitled to notice of the hearing," listed only a post office box address for N.T., left blank the spaces by N.T.'s name for "Date of Service" and "Method Service" in the section entitled "Service of Process," and stated that N.T. was "aware of the Department's involvement at this time, but through the Department only and not via citation." In addition, the Department reported that N.T.'s "whereabouts are unknown at this time." On July 19, following a permanency hearing, the trial court signed an order finding that N.T. "although duly and properly notified, did not appear and wholly made default" and that N.T. had not complied with his service plan. The order placed the children with the mother and provided that visitation with N.T. must be supervised.

In September 2016, the Department filed a status report that again listed N.T. as a person "entitled to notice of the hearing," listed only a post office box address for N.T., left blank the spaces by N.T.'s name for "Date of Service" and "Method Service" in the section entitled "Service of Process," stated that N.T. was "aware of the Department's involvement at this time, but through the Department only and not via citation," and reported that N.T.'s "whereabouts are unknown at this time." The status report also stated that there had been no contact between N.T. and the caseworker. In November 2016, following a permanency hearing, the trial court signed an order finding that N.T. "was not notified, and did not appear" and that N.T. had not complied with his service plan. The order continued placement of the children with the mother and provided that visitation with N.T. must be supervised.

The next permanency hearing took place on January 31, 2017. At the hearing, the Department and the mother agreed that an extension of the case dismissal date was needed to allow

for a final determination as to placement of the children but also agreed to proceed with termination of N.T.'s parental rights.[2] N.T. did not appear at the trial and was not represented by counsel. The Department called three witnesses. A Comal County Sheriff's Deputy testified concerning the alleged incident of domestic violence between N.T. and the mother in January 2016. The deputy stated that the mother had injuries consistent with her allegations, that N.T. had left in a car with the children, that the mother reported that N.T. had just gotten out of jail "for another domestic incident that happened," and that no charges were filed against the mother. The Department investigator testified that she had never met N.T. but had spoken with him by phone once and that he stated that he was not going to cooperate. She also stated that she reviewed N.T.'s criminal history "that's run through DPS in [the Department] system" and it corroborated the mother's statements that there had been prior incidents of domestic violence.

The Department caseworker testified that she had made contact with N.T. once during an unannounced visit. She explained that during the unannounced visit, N.T. was with his daughter, that at the time there was a court order prohibiting visitation, that she knew that he had "a warrant a couple of months ago in regards to domestic violence with [the mother]," and that when she asked for the mother and called 911, he left. The caseworker also testified that she attempted to contact N.T. every month through Facebook and the phone numbers she had, "asked parents" and "everyone

---

[2] In discussion of prior events in the case, the mother's attorney reminded the court that they "had talked about defaulting on [N.T.] who is now back in jail, the perpetrator of the domestic violence and gentleman whose family is being looked at." The trial court then stated, "[b]ecause he's been served and he's not answered or anything," to which the mother's attorney replied, "Right. I would be quite all right with going forward and terminating him interlocutory today." When asked by the trial court, the Department replied that it could "be prepared to do that, your Honor" and proceeded to present its case for termination of N.T.'s parental rights.

under the moon for contact information," and tried to obtain an address or "SID number" from the Bexar County Jail. She stated that "as far as [she] kn[e]w," N.T. had notice of the case. The caseworker further testified that N.T. had not complied with any provisions of the service plan, had not visited with the children, and had not denied that he was the father of the children. She stated that she believed it was in the best interests of the children to terminate N.T.'s parental rights because he had multiple arrests for domestic violence, "did not comply," and had done nothing to alleviate any of the concerns that led to removal of the children and because she did not believe he could meet the physical or emotional needs of the children. She also stated that it concerned her that he had never appeared in court. No other witnesses were called and no exhibits were introduced into evidence.

Following the hearing, the trial court rendered an interlocutory order terminating N.T.'s rights, in which it found by clear and convincing evidence that N.T. was the acknowledged father of the children, stated that N.T. "although duly and properly notified, did not appear and wholly made default," and found that "all persons entitled to citation were properly cited or filed a duly executed waiver of citation herein." The trial court terminated N.T.'s parental rights pursuant to Texas Family Code Sections 161.001(b)(1)(D) and (E) (endangerment grounds); (N) (constructive abandonment); and (O) (failure to complete court ordered services). The trial court also found the termination to be in the best interests of the children.

In February 2017, N.T., acting pro se, filed a notice of appeal (Prior Appeal) and an affidavit of inability to pay costs, stating that he was incarcerated and unable to pay any filing fees. This Court abated the Prior Appeal and remanded the case to the trial court to determine if N.T. was

5

indigent and whether an attorney ad litem should be appointed to represent him. *See N. K. T. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00133-CV, 2017 Tex. App. LEXIS 3467, at \*1 (Tex. App.—Austin Apr. 20, 2017, no pet.) (mem. op.) (per curiam). This Court also questioned our jurisdiction because N.T.'s notice of appeal appeared to be premature and gave N.T. 30 days to take action to cure the jurisdictional defect and supplement the clerk's record with a final order. *See id.* at \*2 n.1. On remand, in April 2017, the trial court appointed an attorney ad litem to represent N.T. "for the purpose of appeal." In May 2017, N.T.'s appointed counsel filed a response to this Court's order requesting that we continue the abatement until the date of the trial setting below or dismiss the Prior Appeal. *See N. K. T. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00133-CV, 2017 Tex. App. LEXIS 4284, at \*1 (Tex. App.—Austin May 11, 2017, no pet.) (mem. op.). This Court reinstated and then dismissed the Prior Appeal for want of jurisdiction. *See id.* at \*2.

In the trial court, the proceedings continued as to the mother's parental rights and permanent placement of the children. In March, in a permanency hearing order, the trial court found that the "Acknowledged Father" N.T. "although duly and properly notified, did not appear and wholly made default," that N.T.'s parental rights had been terminated via interlocutory order, and that he was to have no visitation with the children. Later in March, the Department filed a report with the trial court stating that N.T. was "aware of the Department's involvement at this time, but through the Department only and not via citation" and that N.T.'s "parental rights were terminated

6

on January 30th, 2017."[3]  In reports filed in May 2017 and July 2017, the Department again reported

that N.T. was "aware of the Department's involvement at this time, but through the Department only

and not via citation" and that N.T.'s "parental rights were terminated on January 30th, 2017."  In

August 2017, the trial court signed a final order naming the mother managing conservator, denying

N.T. possession of or access to the children, and making the interlocutory order terminating N.T.'s

parental rights a final judgment for appellate purposes.  This appeal followed.

## DISCUSSION

In his first issue, N.T. argues that the trial court violated his due process rights by

terminating his parental rights without acquiring personal jurisdiction over him.  Whether a trial

court had personal jurisdiction over a defendant is a question of law we review de novo.  *Haaksman*

*v. Diamond Offshore (Bermuda) Ltd.*, 260 S.W.3d 476, 479 (Tex. App.—Houston [14th Dist.] 2008,

pet. denied).  Involuntary termination of parental rights involves fundamental constitutional rights.

*Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  "When the State seeks to sever permanently the

relationship between a parent and a child, it must first observe fundamentally fair procedures."

*In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48

(1982)).  "The most basic of these is notice."  *Id.*  "Unless a defendant has waived citation, a trial

court lacks personal jurisdiction over a defendant to whom citation has not been 'issued and served

in a manner provided for by law.'"  *In re T.J.T.*, 486 S.W.3d 675, 679 (Tex. App.—Texarkana 2016,

---

[3] Although the report stated that N.T.'s parental rights were terminated on January 30, 2017, the record reflects that the hearing was held on January 31, 2017, and the interlocutory order terminating N.T.'s parental rights was signed on February 9, 2017.

no pet.) (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)). In suits seeking to terminate parental rights, citation shall be issued and served as in other civil cases. Tex. Fam. Code § 102.009(c). "In a direct appeal from a no-answer default judgment, there is no presumption of valid issuance, service, and return of citation." *Id.* (citing *In re E.R.*, 385 S.W.3d at 563).

N.T. argues that the appellate record is "devoid of any evidence suggesting N.T. was ever personally served or any substitute service pursuant to [Texas Rule of Civil Procedure] 109 was ever authorized or had upon him." N.T., however, does not deny that he was served. After N.T. filed his brief, the Department requested and caused to be filed a supplemental clerk's record, which contains the deputy sheriff's completed return of service of citation stating that N.T. was served in person on March 16, 2016, at "1243 Austin Hwy, SATX 78209." Although the Department included some conflicting assertions in its form status reports regarding service on N.T., the officer's return is prima facie evidence of proper service. *See Primate Const. Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam). "The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party." *Id.* N.T. does not challenge the method, manner, or validity of the service of citation. Accordingly, we conclude that the trial court had personal jurisdiction over N.T. at the time it rendered the interlocutory order terminating N.T.'s parental rights. We overrule N.T.'s first issue. *See In re G.C.*, No. 11-16-00245-CV, 2017 Tex. App. LEXIS 1175, at *1–2 (Tex. App.—Eastland Feb. 10, 2017, pet. denied) (mem. op.) (affirming termination, holding that where father was not served until after adversary hearing, first status hearing, and initial permanency hearing had been held, but was served long before

final trial, trial court had personal jurisdiction over father at time it held hearing and entered order of termination).

In his second issue, N.T. argues that the trial court violated his constitutional due process right to notice of the January 31, 2017 trial setting. N.T. contends that "[t]here is no indication in the record of any written or verbal notice to N.T. that the trial to terminate his parental rights was set for January 31, 2017" and that the Department's failure to provide N.T. with specific notice of the date the case was set for trial constitutes a separate and distinct constitutional due process violation. On these facts, we cannot agree. Rule 99 requires, and the citation served on N.T. contained, the following notice:

> You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Tex. R. Civ. P. 99(c); *see id.* R. 99(b)(10) (requiring citation to contain time within which defendant must file written answer), (12) requiring citation to notify defendant that failure to file answer may result in default judgment); *see also id.* R. 239 (providing that at any time after defendant is required to answer, plaintiff may take default judgment against defendant provided return of service has been on file for time required by rule 107), 107(h) (requiring that proof of service be on file 10 days, exclusive of day of filing and day of judgment, before default judgment may be taken). Thus, N.T. was on notice that he needed to file an answer and that his failure to do so could result in a default judgment terminating his parental rights.

9

Had N.T. filed an answer or otherwise entered an appearance by participating in the proceedings so as to impliedly recognize the court's jurisdiction over him, he would have been entitled to notice of the January 31, 2017 setting. *See Rojas v. Scharnberg*, No. 01-09-01039-CV, 2011 Tex. App. LEXIS 1975, at *5 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (mem. op.) (observing that defendant who makes appearance in case is entitled to notice of hearing and that whether defendant who has not filed answer has made appearance under Rule 120 depends on nature and quality of his activities in case and whether such activities impliedly recognize court's jurisdiction over him). "Once a defendant has made an appearance in a cause, he is entitled to notice of the trial setting as a matter of due process under the Fourteenth Amendment to the federal constitution . . . ." *LBL Oil Co. v. International Power Servs., Inc.*, 777 S.W.2d 390, 390–91 (Tex. 1989) (per curiam). The due process rights of a defendant who has made appearance are violated when judgment is subsequently entered without notice of setting and opportunity to voice objections at the hearing even if the defendant previously waived notice of citation. *In re K.M.L.*, 443 S.W.3d 101, 118–19 (Tex. 2014). However, no advance notice of hearing is required for a no-answer default judgment proceeding in which the defendant has not participated. Tex. R. Civ. P. 329; *Rojas*, 2011 Tex. App. LEXIS 1975, at *5 ("A defendant who fails to answer or appear is not entitled to notice of a hearing on the default judgment."); *Wilson v. Wilson*, 132 S.W.3d 533, 536 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("The law imposes no duty on the plaintiff to notify a defendant before taking a default judgment when he has been served properly with the citation and petition, and nonetheless has failed to answer or otherwise appear."); *Zuyus v. No'Mis Communs.,*

10

*Inc.*, 930 S.W.2d 743, 747 (Tex. App.—Corpus Christi 1996, no writ) ("No advance notice of a hearing is required for a no-answer default judgment.").

Here the record reflects that N.T. was served with citation and failed to enter an appearance; he did not file an answer or participate in the proceedings in any way so as to impliedly recognize the court's jurisdiction over him. In fact, he expressly informed the investigator of his intention not to cooperate with the Department in the proceedings. Thus, the due process requirements for notice were not triggered. *See Simmons v. McKinney*, 225 S.W.3d 706, 709 (Tex. App.—Amarillo 2007, no pet.). The return of service was on file the requisite 10 days prior to the hearing; in fact, it was filed on March 28, 2016, some 10 months prior to the hearing on the merits. *See* Tex. R. Civ. P. 107(h), 239. In addition, the record reflects that N.T. was served with notice of the status hearing held on March 29, 2016. On this record, we conclude that N.T. was not entitled to notice of the January 31, 2017 hearing setting and the trial court did not violate his due process rights by terminating his parental rights at the hearing. *See* Tex. R. Civ. P. 329; *Rojas*, 2011 Tex. App. LEXIS 1975, at *5; *Simmons*, 225 S.W.3d at 709; *Wilson*, 132 S.W.3d at 536 . We overrule N.T.'s second issue.

In his third and final issue, N.T. argues that the trial court committed a constitutional due process violation when it failed to appoint N.T. an attorney pursuant to the Texas Family Code. N.T. cites section 107.013(a)(3) of the Family Code, which mandates that the trial court appoint an attorney ad litem to represent the interests of an alleged father who has failed to register with the

registry under Family Code chapter 160 and whose identity or location is unknown.[4] *See* Tex. Fam. Code § 107.013(a)(3). However, N.T.'s identity and location were not unknown. N.T. was known to the Department by name, the Department's investigator and caseworker each had personal contact with him, and he was personally served with citation and notice of the March 29 hearing. Although the Department later lost contact with N.T., who expressly refused to cooperate, and represented in form status reports that at times it did not know his whereabouts, on this record, we conclude that N.T.'s location was not unknown within the meaning of section 107.013(a)(3). *See In re V.V.*, 349 S.W.3d 548, 550, 594 n.22 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (Keyes, J., concurring & dissenting) (distinguishing between father who appeared in court and agreed to take paternity test and "'unknown father,' a separate party" also named in petition "who was entitled to counsel because the unknown father had not filed with the paternity registry and both his identity and location were unknown"); *see also In re J.M.*, 387 S.W.3d 865, 872 (Tex. App.—San Antonio 2012, no pet.) (holding that where Department was in contact with father more than four months before final hearing, his identity and location were not unknown for purposes of Family Code section 161.002, which authorizes trial court to terminate alleged father's parental rights under certain circumstances, including when his identity and location are unknown). Nor was N.T. entitled to an appointed attorney under section 107.013(a)(1) because he did not file an answer, appear at any hearing, or in any way oppose the termination. *See* Tex. Fam. Code § 107.013(a)(1) (requiring

---

[4] Chapter 160 is the Uniform Parentage Act, which provides, among other things, for the establishment of a registry of paternity for a man who desires to be notified of a proceeding for the termination of parental rights regarding a child he may have fathered. *See* Tex. Fam. Code §§ 160.401–.423.

12

appointment of attorney ad litem for indigent parent of child who responds in opposition to termination); *Salinas v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-04-00065-CV, 2004 Tex. App. LEXIS 7640, at *10 (Tex. App.—Austin 2004, pet. denied) (mem. op.) (concluding that trial court had no duty under section 107.013 to appoint attorney for father—who initially informed Department he did not want to participate in proceedings—until he appeared at hearing, expressed interest in contesting termination of parental rights, and requested attorney).

Further, section 107.013 requires that a parent claiming indigence file an affidavit of indigence that complies with Rule 145(b) of the Texas Rules of Civil Procedure before the court can conduct a hearing to determine the parent's indigence for purposes of appointing an attorney ad litem. Tex. Fam. Code § 107.013(d); *In re K.L.*, 442 S.W.3d 396, 411 (Tex. App.—Beaumont 2012), *rev'd in part on other grounds*, 443 S.W.3d 101 (Tex. 2014). There is no indication in the record that N.T. filed an affidavit of indigence or any other statement that would give rise to an inference that he was unable to afford an attorney prior to the interlocutory order terminating N.T.'s parental rights. N.T. did not file his notice of inability to pay costs until February 22, 2017, the day after he filed his premature notice of appeal in the Prior Appeal and almost a month after the interlocutory order terminating his parental rights.[5] For these reasons, we conclude that N.T. was not entitled to appointment of an attorney ad litem and that the trial court did not err in failing to appoint counsel for N.T. prior to its interlocutory order. *See In re K.L.*, 442 S.W.3d at 411–12 (holding that trial court did not err in failing to appoint counsel for father prior to jury

---

[5] As explained above, this Court abated, and ultimately dismissed, the Prior Appeal and remanded to the trial court, which appointed N.T. counsel for purposes of this appeal.

verdict where father did not sign affidavit claiming indigence until trial was over); *Salinas*, 2004 Tex. App. LEXIS 7640, at *9–10 (stating that section 107.013 does not set deadline for appointment of counsel and that timing is matter of trial court's discretion and holding that trial court did not err in delaying appointment of counsel until father, who was aware of proceeding and communicated to Department he did not want to participate, expressed interest in contesting termination and requested attorney). We overrule N.T.'s third issue.

## CONCLUSION

Having overruled N.T.'s issues, we affirm the trial court's order terminating N.T.'s parental rights to his children.[6]

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed: November 29, 2017

---

[6] N.T. does not challenge the sufficiency of the evidence to support the trial court's determination that he is the children's acknowledged father or its decision to terminate his parental rights. Therefore, we do not address these issues.