

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00128-CV
_____


LE NGUYEN, APPELLANT

V.

ELENA LOPEZ, INDIVIDUALLY AND AS REPRESENTATIVE OF AND ON BEHALF
OF THE ESTATE OF JEANETTE LOPEZ AND CARISTINA AND MIGUEL LERMA,
INDIVIDUALLY AND ON BEHALF OF BERNICE LERMA, A MINOR, AND ON
BEHALF OF ALL KNOWN HEIRS, APPELLEES

_____

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-273517-14, Honorable Melody Wilkinson, Presiding
_____

September 5, 2018

OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

It no longer appearing that bankruptcy stays disposition of this matter, we now

address it.[1]  Le Nguyen (Le) filed a restricted appeal from a $2.9 million default judgment

entered in favor of Elena Lopez, Individually and as Representative of and on behalf of

---

[1] Because this appeal was transferred from the Second Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

The Estate of Jeanette Lopez and Caristina and Miguel Lerma, Individually and on behalf of Bernice Lerma, a minor, and on behalf of all known heirs (collectively Lopez). Her two issues concern the 1) lack of proper service of citation and 2) the insufficiency of the evidence underlying the damages awarded. Because the first issue is dispositive of the appeal, we will not consider the second.

*Background*

The circumstances underlying the appeal allegedly arose from the sale of alcohol to one or more minors. The three were subsequently involved in a traffic accident wherein two were killed. The third minor suffered major injury.

Lopez sued the vendors who sold the alcohol to the minors. Via an amended petition, she added Le and two other persons as defendants. The vendors apparently leased their premises from Le.

Le purportedly was served with citation on September 8, 2012. Because she did not file an answer or otherwise appear by the Monday next after the expiration of 20 days from September 8th, Lopez sought and ultimately obtained a default judgment against her. Thereafter, trial was convened on the issue of damages, which resulted in the aforementioned $2.9 million award. The trial court signed its final judgment on September 19, 2014, and collection efforts ensued. As those efforts continued, Le discovered that she had been sued and judgment was entered against her. Alleging that she lacked the opportunity to contest liability due to the absence of valid service, she initiated this restricted appeal.

*Authority*

A restricted appeal is a direct attack upon a default judgment. *Kilgore v. Lopez*, No. 07-17-00284-CV, 2018 Tex. App. LEXIS 6460, at *3 (Tex. App.—Amarillo Aug. 15,

2018, no pet. h.) (mem. op.). For one to successfully pursue a restricted appeal, various elements must exist. That is 1) the appeal must be perfected within six months after the judgment was signed; 2) the appellant must have been a party to the underlying lawsuit; 3) the appellant must not have participated in the trial of the underlying suit or timely filed post-judgment motions or request for findings of fact and conclusions of law; and 4) error must appear on the face of the record. *Id.* No one disputes that the first three elements exist. Only the last one is in play. Thus, we must decide if the face of the appellate record illustrates the presence of reversible error. *See id.* (describing the face of the record as consisting of the papers on file with the trial court when it rendered judgment, including the clerk's and reporter's records).

Le initially argues that she was not served with citation and consequently the trial court never acquired personal jurisdiction over her. Lacking such jurisdiction, it allegedly had no authority to bind her to the default judgment. *See In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (quoting *Wilson v. Dunn,* 800 S.W.2d 833 (Tex. 1990)) (stating that "[p]ersonal jurisdiction, a vital component of a valid judgment, is dependent 'upon citation issued and served in a manner provided for by law.'"); *Garcia v. Ennis*, __ S.W.3d __, __, 2018 Tex. App. LEXIS 4841, at *7 (Tex. App.—Fort Worth June 28, 2018, no pet.) (stating that absent an appearance or waiver, the trial court does not have personal jurisdiction to enter the default judgment against the defendant unless the record affirmatively shows poper service of citation on the defendant at the time the default judgment is entered). Aside from the citation and its return, neither party cites us to other proof of service. Rather, Lopez posits that "the service return filed with the trial court states that Nguyen was served at the TT Market business address on September 4, 2012" and "[t]he service return serves as prima facie evidence of valid service."

3

For a default judgment to be properly rendered, the record must affirmatively show that, at the time default was entered, citation was properly served or the defendant waived service. *Garcia v. Ennis, supra*; *Mc Phase II Owner, LLC v. TI Shopping Ctr., LLC*, 477 S.W.3d 489, 491 (Tex. App.—Amarillo 2015, no pet.); M*arrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 378 (Tex. App.—Houston [1ˢᵗ Dist.] 2007, pet. denied). Furthermore, a valid return of service constitutes prima facie evidence of the facts stated therein, i.e., service. *Primate Constr. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994); *Owsley v. Owsley*, No. 13-17-00025-CV, 2017 Tex. App. LEXIS 11073, at *5 (Tex. App.—Corpus Christi Nov. 30, 2017, no pet.) (mem. op.). Yet, there is no presumption that citation was properly issued, served or returned. *Mandel v. Lewisville Indep. Sch. Dist.*, 445 S.W.3d 469, 474 (Tex. App.—Fort Worth 2014, pet. denied). Should the record fail to affirmatively show that citation and its service and return were properly done in strict compliance with the rules of civil procedure, then not only is error apparent on the face of the record but also the attempted service is invalid. *Id.*; *accord Ins. Co. v. Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009) (stating that the Supreme Court has required for over a century that strict compliance with the rules for service of citation affirmatively appear on the record for a default judgment to withstand direct attack). Strict compliance, when it comes to assessing the validity of citation, its service and return, means literal compliance with the Rules of Civil Procedure. *Montgomery v. Hitchcock*, No. 03-14-00643-CV, 2016 Tex. App. LEXIS 5454, at *3 (Tex. App.—Austin May 25, 2016, no pet.) (mem. op.); *In re J.M.*, 387 S.W.3d 865, 870 (Tex. App.—San Antonio 2012, no pet.).

Next, the Texas Rules of Civil Procedure generally control citation and its issuance, service and return. One such rule directs that the return of service must include, among other things, "the name of the person who served or attempted to serve the process."

TEX. R. CIV. P. 107(b)(9). Another requires that the officer or person who served or attempted service to sign the return. TEX. R. CIV. P. 107(e). If that person is someone "other than a sheriff, constable, or clerk of the court," then "the return must either be verified or signed under penalty of perjury." *Id.* Strict compliance with these rules did not occur here.

Again, Le was purportedly served with citation on September 8, 2012. The "Officer's Return" mentioned the date, time, place and person served. Below the paragraph containing that information appeared a line beginning with the phrase "Authorized person / Constable / Sheriff."[2] Following those three descriptions appeared a line whereon the authorized person, constable or sheriff was to write or print his name. The space was left blank. In other words, the name of the person allegedly effectuating service was omitted from the return. And, while someone wrote the name "Quang Ha" upon another line in the return appearing after the phrase "signed and sworn to by the said _____," nothing in the form expressly denominated "Quang Ha" as the person who served citation on Le. Nor does anything disclose who that person was and the role he played, if any, in perfecting service. In short, we are left to speculate that "Quang Ha" was the name of the person who served citation. *See Mega v. Anglo Iron & Metal Co.,* 601 S.W.2d 501, 504 (Tex. App.—Corpus Christi 1980, no writ) (holding that the circumstances failed to show strict compliance with the Rules of Civil Procedure when "A.R. 'Tony' Martinez" was the name of the person appointed to serve citation but the return was signed "A.R. Martinez, Jr.").

---

[2] The words "Constable" and "Sheriff" contained interlineations or strike-marks. These interlineations indicate that the person who allegedly served process was neither a constable nor a sheriff.

As for the illegible signature on the return, it too fails to fill the void for several reasons. First, we know not if it was that of "Quang Ha" or someone else due to its illegibility. Second, Rule 107 requires **both** the name and signature. Merely placing one or the other falls short of strictly complying with that rule. The same is also true of the identification number and expiration date handwritten next to the blank line upon which the name of the process server was to be written. Rule 107 also mandates that if the person who served citation were a process server certified under order of the Supreme Court, his or her identification number and the expiration date of the certificate must be disclosed in the return. TEX. R. CIV. P. 107(b)(10). So, just as a signature (especially an illegible one) falls short of complying with Rule 107 when the name is missing, writing an identification number and its expiration date falls short of literal compliance when the name of the process server goes missing.

Another defect appears on the face of the return, as well. It arises from the interlineation of the words "Constable" and "Sheriff." As we said in footnote two, the strike-mark indicates that whoever served process was neither a constable nor sheriff. Under those circumstances, the return had to be either verified or signed under penalty of perjury. TEX. R. CIV. P. 107(e). Yet, the "Officer's Return" fails to state that the person who signed it, (i.e., "Quang Ha") did so under penalty of perjury. It merely said: "Signed and sworn to by the said <u>Quang Ha</u> before me this <u>10th</u> day of <u>Sept.</u> <u>2012</u> to certify which witness my hand and seal of office."

As for the return being "verified," Rule 107 does not define the term. Nor has our Supreme Court done so. Yet, the latter body noted that other courts which "have addressed the issue have held that no particular form of verification is required so long as the affiant **swears to the truth of the contents** and that the affidavit **is based on**

6

***personal knowledge***." *In re K.M.L.*, 443 S.W.3d 101, 110 (Tex. 2014) (emphasis added); *see Andrews v. Stanton*, 198 S.W.3d 4, 8 (Tex. App.—El Paso 2006, no pet.) (stating that "a verification declares that the facts contained in a certain document are true"); *see also In re Valliance Bank*, 422 S.W.3d 722, 726 (Tex. App.—Fort Worth 2012, orig. proceeding) (en banc) (defining a verification as a formal declaration made in the presence of an authorized officer by which one swears to the truth of the statements in the document). Here, "Officer's Return" contains no verbiage expressing that the factual contents uttered therein are true or that "Quang Ha" represented to anyone that the factual contents were true. Nor does it contain language illustrating that "Quang Ha" had personal knowledge of the factual representations in the "Officer's Return." That he may have "signed and sworn" to the return, according to the notary's representation, means little for that phrase fails to disclose the nature or content of the oath to which he swore. It leaves us to assume not only that he swore to an oath but also that the content of the oath referred to the truthfulness of the factual statements uttered in the return.

The theory behind requiring one to verify facts in a document is easy to understand. When liability for a wrong depends upon the truthfulness of those facts, it is rather reasonable to expect someone to come forward and declare that he knows the facts are true. This is especially so in a default setting where a failure to enter an appearance after proper service of citation effectively adjudicates the absent person's liability for the alleged misconduct. *See Paradigm Oil, Inc. v. Retamco Operating, Inc.,* 373 S.W.3d 177, 183 (Tex. 2012). This is not a trivial matter. And, it is best to heed the caution of a sister court when it warned against stepping upon "a slippery slope rife with danger to the due process our procedural rules were designed to protect." *In re J.B.*, No. 02-15-00040-CV, 2015 Tex. App. LEXIS 12929, at *9 (Tex. App.—Fort Worth Dec. 23, 2015, no pet.) (mem.

7

op.). No one took to the time to expressly attest to the accuracy of the return's factual content even though Le's liability for the misconduct alleged against her and the ensuing $2.9 million damage award were dependent upon same. No one said that the information about the time and place of serving Le was true. No one said that they even had personal knowledge of that information. Such could have been corrected through an amended return. *Id.* But, Lopez did not take the time to obtain one and thereby assure the validity of the award granted her in a default setting.

Given the absence of 1) a verification, 2) a statement that the signature was made under penalty of perjury, and 3) the name of the person authorized to serve Le, there was no strict compliance with the demands of Rule 107. That being missing means the return of service was invalid. The return being invalid means that it does not constitute prima facie evidence of service. Without proof of lawful service or strict compliance with the rules of procedure, the default judgment must be reversed.

We sustain Le's first issue, reverse the default judgment of the trial court, and remand the cause. This disposition of the appeal relieves us from having to address the other issues raised by Le.

Brian Quinn
Chief Justice

8