287 S.W.3d 510 (2009)
In The Interest of C.M.D., a Child.
No. 14-08-00113-CV.
Court of Appeals of Texas, Houston (14th Dist.).
June 25, 2009.
*512 Sallee S. Smyth, Richmond, TX, for appellants.
Mark Lapidus, Houston, TX, for appellees.
Panel consists of Chief Justice HEDGES and Justices YATES and GUZMAN.

OPINION
LESLIE B. YATES, Justice.
Appellant LDS Family Services appeals the trial court's sua sponte determination that section 161.002(b) of the Texas Family Code is unconstitutional under the Texas and United States Constitutions. Because we determine the trial court's ruling is not supported by the evidence and circumstances of this case, we reverse and remand.

BACKGROUND
On October 19, 2007, LDS, a private adoption agency, brought an adoption petition regarding C.M.D., who was born in January 2007. The mother had submitted an affidavit of relinquishment of parental rights and provided another affidavit with information about the father. According to the mother, she met the father at a bar while visiting her sister in California. They became intimate and dated for several months. The mother then returned to Texas and discovered she was pregnant. She contacted the father, who was surprised and noncommittal about any future plans. He did not send any gifts or money. The mother called again after having the baby. The father said he was visiting his mother in the Dallas area and asked if they could come and see the baby. The mother agreed, but the father never showed up. She tried to call his cell phone a few days later, but it was out of service, as was another phone number he had given her. She has not heard from the father since, despite her cell phone number remaining unchanged, and he has never sent any gifts or financial support. After attempting single parenthood for eight months, the mother decided to give the baby up for adoption.
LDS requested that the trial court terminate the father's parental rights under *513 Family Code section 161.002(b) because he had not registered with the Texas paternity registry. TEX. FAM.CODE ANN. § 161.002(b) (Vernon Supp.2008). The Family Code establishes a paternity registry and provides that if an alleged father does not (a) register before the child is born or within thirty-one days after birth or (b) take other steps to protect his parental rights, those rights can be terminated without notice, service, or any attempt to locate him. See id. §§ 160.402, 160.404, 161.002(b), (c), (c-1), (d) (Vernon 2002 & Supp.2008). The father was not present during the termination proceedings, and no ad litem was appointed to represent his interests.
The trial court refused to apply the statute and terminate the father's parental rights, instead declaring sua sponte that the statute was unconstitutional under the state and federal constitutions based on due process and equal protection grounds. The trial court ruled the statute unconstitutional because it does not require (a) due diligence to locate the alleged father, (b) service of process on the alleged father, (c) appointment of an attorney ad litem to represent the alleged father's interests, or (d) a best interest finding. The trial court also found that the statute encourages default of alleged fathers and promotes fraud by allowing mothers to withhold information regarding the location of alleged fathers.[1]
The trial court refused to terminate either parent's parental rights, and though C.M.D. has been with his adoptive parents since LDS filed the adoption petition, his legal status is unsettled. LDS now appeals, arguing that the trial court erred in finding that the paternity registry statute is unconstitutional. LDS emphasizes that the statute is designed for situations exactly like this in which the putative father appears to have no interest in the child. It argues that the statute gives a putative father the opportunity to protect his rights while serving the important state interest of facilitating early and legally secure adoptions.

JURISDICTION
Before we address the trial court's analysis, we first examine our jurisdiction to hear this appeal. See M.O. Dental Lab v. Rape, 139 S.W.3d 671, 673 (Tex. 2004) (stating that appellate court has a duty to assess its own jurisdiction sua sponte). Civil Practice and Remedies Code section 37.006(b) provides that the attorney general must be notified "if the statute ... is alleged to be unconstitutional." TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(b) (Vernon 2008). Failure to do so deprives the trial court, and therefore this court, of jurisdiction. See Commerce Indep. Sch. Dist. v. Hampton, 577 S.W.2d 740, 741 (Tex.Civ.App.-Eastland 1979, no writ). It is unclear if section 37.006(b) applies in this case, but we need not resolve that issue here because even if it does, the notice requirement was met. After we raised this jurisdictional issue with the parties, LDS's counsel filed a post-submission brief with an affidavit and two *514 letters showing she notified the attorney general's office of this case (including a telephone call and sending copies of the trial court's order and findings of fact and conclusions of law, two relevant cases, a law review article, and LDS's appellate brief). We can properly consider this evidence as it is necessary for us to make our jurisdictional determination. See TEX. GOV'T CODE ANN. § 22.220(c) (Vernon 1988) ("Each court of appeals may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction."); see also Mellon Serv. Co. v. Touche Ross & Co., 946 S.W.2d 862, 863-64 (Tex.App.-Houston [14th Dist.] 1997, no writ) (considering affidavits attached to motion to dismiss appeal for lack of jurisdiction). We determine LDS's evidence establishes that any notice required under section 37.006(b) was given. Therefore, we have jurisdiction to consider this appeal.

ANALYSIS
We next consider whether the trial court had the authority to declare the statute unconstitutional sua sponte. In Doe 2, the trial court sua sponte declared unconstitutional the Texas statute providing a bypass to the requirement for a minor to obtain an abortion, and the Texas Supreme Court held that the trial court had no authority to do so. See In re Doe 2, 19 S.W.3d 278, 284 (Tex.2000). The court explained:
We have previously cautioned that the constitutionality of a statute should be considered only when the question is properly raised and such determination is necessary and appropriate to a decision in the case. The presumption is that a statute enacted by our Legislature is constitutional, and attacks on that presumption should generally be raised as an affirmative defense to enforcement of the statute. In the absence of an appropriate pleading raising the issue of unconstitutionality, the trial court is generally without authority to reach the issue.
Id. (emphasis added). In support of its statement that the trial court is generally without authority to reach the issue, as opposed to an absolute rule against doing so, the supreme court cited this court's opinion in Houston Chronicle Publishing Co. v. City of Houston, 531 S.W.2d 177 (Tex.Civ.App.-Houston [14th Dist.] 1975), writ ref'd n.r.e., 536 S.W.2d 559 (Tex.1976). See Doe 2, 19 S.W.3d at 284 n. 39 (citing Houston Chronicle). In that case, we held that a sua sponte constitutional determination was appropriate based on the importance of the statute at issue and its impact on Texas citizens. Houston Chronicle, 531 S.W.2d at 182. LDS argues that we should apply the Houston Chronicle rationale in this case because of the importance of the State's interest in protecting the integrity of the adoption process and of resolving C.M.D.'s legal status as soon as possible. We agree with LDS and determine that the trial court had authority in this case to consider the issue of constitutionality of the statute sua sponte.
The trial court's judgment and subsequent findings of fact and conclusions of law did not specify whether it was finding the statute unconstitutional on its face or only as applied to the father. Therefore, we will consider both types of analysis. A statute is unconstitutional as applied when its application to the litigant deprives him of a constitutional right. See Tex. Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 518 n. 16 (Tex.1995). A facial constitutional challenge requires a showing that a statute is always unconstitutional in every application. See id. at 518. Thus, for a statute to be facially, and therefore always, unconstitutional, it must *515 also be unconstitutional as applied to the individual at issue. See id.; Santikos v. State, 836 S.W.2d 631, 633 (Tex.Crim.App. 1992); Rodriguez v. State, 47 S.W.3d 86, 88 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).[2]
Courts are to presume that a statute is constitutional and should not reach a constitutional issue unless absolutely required. See Pena v. State, 191 S.W.3d 133, 136 (Tex.Crim.App.2006) ("`If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality... unless such adjudication is unavoidable.'" (quoting Clinton v. Jones, 520 U.S. 681, 690, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997))); Walker v. Gutierrez, 111 S.W.3d 56, 66 (Tex.2003) ("We begin our analysis by presuming the statute is constitutional."); Meshell v. State, 739 S.W.2d 246, 250 (Tex.Crim.App.1987) (noting court's "reluctance to decide constitutional questions unless absolutely necessary"). Further, courts should decide constitutional issues narrowly based on the precise facts of the case, not speculative or hypothetical injuries. See Pena, 191 S.W.3d at 136 (following U.S. Supreme Court practice "not `to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied'" (quoting Clinton, 520 U.S. at 690, 117 S.Ct. 1636)); Tex. Dep't of Family & Protective Servs. v. Dickensheets, 274 S.W.3d 150, 155 (Tex. App.-Houston [1st Dist.] 2008, no pet.) ("Facial invalidity cannot be premised on `hypothetical facts that have not yet arisen.'" (quoting Tex. Boll Weevil Eradication Found., Inc. v. Lewellen, 952 S.W.2d 454, 463 (Tex.1997))); Valero RefiningTex. L.P. v. State, 203 S.W.3d 556, 563 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (rejecting constitutional challenge based on "hypothetical analysis" and noting appellant did not bring forth sufficient record to show the facts surrounding his conduct to support a constitutional violation). A statute cannot be unconstitutional based only on harm to another; there must be an actual injury to the litigant in the present case. See Santikos, 836 S.W.2d at 633 ("[I]t is incumbent upon the [appellant] to show that in its operation the statute is unconstitutional as to him in his situation; that is may be unconstitutional as to others is not sufficient." (internal quotation marks omitted)); Meshell, 739 S.W.2d at 250 ("Before a court decides an issue involving the constitutionality of a statute, it must first assure itself that the party raising such a claim has presently been injured by the statute."); Ex Parte Dave, 220 S.W.3d 154, 156 (Tex.App.-Fort Worth 2007, pet. ref'd) ("That the statute may be unconstitutional as applied to others is insufficient to support a facial challenge.").
The only evidence we have in this case to assess a possible constitutional violation to the father is as follows:
1. His name (provided by the mother).
2. The mother's affidavit that she told the father of both the pregnancy and birth, he has not provided any gifts or support, he did not visit the baby after stating that he would, his old phone numbers are no longer in service, and her phone number has not changed.
3. The father did not register in the paternity registry.
4. The father was not served, and LDS made no independent effort to find him. *516 Based on this evidence, we cannot agree with the trial court's determination that a constitutional violation has been established. An unwed father does not automatically have full constitutional paternal rights by virtue of a mere biological relationship. See Lehr v. Robertson, 463 U.S. 248, 261-62, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); In re J.W.T., 872 S.W.2d 189, 198 (Tex.1994). Rather, he must, early in the child's life, take some action to assert those rights. See Lehr, 463 U.S. at 261-62, 103 S.Ct. 2985; In re J.W.T., 872 S.W.2d at 198.
Based on the mother's affidavit, she called to tell the father that she was pregnant and then again after she had the baby, but he offered no assistance, never contacted her again, and disconnected his phone numbers. If the father had no intent to assert his parental rights, he could not have suffered a due process or equal protection violation based on a deprivation of those rights. The mother's affidavit evidence is uncontroverted, but even if the trial court did not credit it, that leaves no evidence one way or the other about the father's knowledge, circumstances, or desires. An absence of evidence cannot overcome the presumption of constitutionality. See Valero, 203 S.W.3d at 563 (rejecting constitutional challenge because appellant did not bring forth evidence regarding his circumstances); see also Walker, 111 S.W.3d at 66 (stating we are to presume statute is constitutional); cf. Atmos Energy Corp. v. Abbott, 127 S.W.3d 852, 857 (Tex.App.-Austin 2004, no pet.) ("A court cannot pass on the constitutionality of a statute unless the facts have matured, forming the concrete basis against which the statute may be applied"). Unlike other reported cases challenging the constitutionality of paternity registry statutes, we have no complaining father.[3] That he (or another father) could possibly be aggrieved is not a proper basis to declare the paternity registry statute unconstitutional in this case, either as applied or on its face. See M.V.S. v. V.M.D., 776 So.2d 142, 145, 151 (Ala.Civ.App.1999) (rejecting equal protection and due process challenges to paternity registry statute because putative father had notice of adoption proceedings and thus the constitutional argument did not apply to him); see also Santikos, 836 S.W.2d at 633; Meshell, 739 S.W.2d at 250; Ex Parte Dave, 220 S.W.3d at 156. Without evidence of an actual injury in the case before it, the trial court erred in declaring the paternity registry statute unconstitutional. Therefore, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.
NOTES
[1] The trial court also based its ruling on the disparity of treatment of alleged fathers depending on the age of the child. The statute requires due diligence to locate an alleged father who has not registered if the child is over one year of age at the time the petition for adoption or termination is filed, but that is not required if the child is under one. See TEX. FAM.CODE ANN. § 161.002(b)(2), (3). However, any termination order under section 161.002(b)(2) or 161.002(b)(3) rendered after January 1, 2008 does not require either service or an attempt to locate the alleged father, regardless of the age of the child. See id. § 161.002(c-1). Because any termination order in this case will necessarily be rendered after January 1, 2008, any such concern is moot in this case.
[2] This rule is altered in First Amendment cases and is thus not applicable here. See Santikos, 836 S.W.2d at 633; Rodriguez, 47 S.W.3d at 88.
[3] Even with a complaining father, the constitutionality of paternity registry statutes has been overwhelmingly upheld. See, e.g., Lehr, 463 U.S. at 249-68, 103 S.Ct. 2985; A.S.B. v. Dep't of Children & Family Servs., 293 Ill. App.3d 836, 228 Ill.Dec. 238, 688 N.E.2d 1215, 1220-25 (1997); Heidbreder v. Carton, 645 N.W.2d 355, 372-77 (Minn.2002); Friehe v. Schaad, 249 Neb. 825, 545 N.W.2d 740, 744-48 (1996); Robert O. v. Russell K., 80 N.Y.2d 254, 590 N.Y.S.2d 37, 604 N.E.2d 99, 101-05 (1992); In re Baby Boy K., 546 N.W.2d 86, 90-101 (S.D.1996); Beltran v. Allan, 926 P.2d 892, 897-98 (Utah Ct.App. 1996).