Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★  ★ ★ ★

## OPINION

No. 04-11-00818-CV

**IN THE INTEREST OF R.J.**, et al., Children

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-PA-01901
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  August 8, 2012

AFFIRMED

Appellants Raul Juarez and Heraldo Perez each had his parental rights terminated to his children born to Abigail Arguijo.  Each appellant contends (1) the evidence was factually insufficient to prove the Texas Department of Family and Protective Services exercised due diligence in locating him and (2) the trial court abused its discretion by appointing the Department as permanent managing conservator of the children and failing to appoint him as managing or possessory conservator.  We affirm the trial court's order.

### BACKGROUND

On September 1, 2010, the Department filed its original petition to terminate Arguijo's, Juarez's, and Perez's parental rights to the children subjects of the suit.  Arguijo alleged that

Juarez is the father of R.J. and P.A. and Perez is the father of A.A., E.P., and A.P.[1] The Department asserted it "exercised due diligence in attempting to locate" each of the fathers including "search[ing] local CPS records and . . . interview[ing] parties who would have access to his whereabouts or a phone number to reach him" and sending a letter to the Mexican consulate asking for help in locating each man. Neither Juarez nor Perez registered their paternity to any of Arguijo's children with the Texas registry of paternity. When the Department petitioned to terminate the appellants' parental rights, the fathers could not be located; the trial court authorized service by posting a copy of the citation at the courthouse door. The trial court appointed counsel to represent Arguijo and a separate counsel to represent Juarez and Perez. After multiple hearings, the trial court granted the Department's petition and terminated Arguijo's parental rights to R.J., P.A., A.A., E.P., and A.P. In the termination order, the court adjudicated Juarez to be father of R.J. and P.A., Perez to be the father of A.A., E.P., and A.P., and terminated each one's rights to the specified children. Juarez and Perez[2] appeal the termination order.[3]

## STANDARDS OF REVIEW

We review termination findings for "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). If, after considering all the evidence, a factfinder could have reasonably formed "a firm belief or

---

[1] To protect the identities of the children, we identify them by their initials only. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2011). The Department's petition to correct their identities altered their initials, but to avoid confusion, we refer to them by the initials used herein. *See id.*

[2] Court-appointed counsel filed a notice of appeal and briefs for Juarez and Perez. However, it is not clear whether Juarez or Perez had actual notice of the termination proceeding or are aware that this appeal is pending. Arguijo filed a notice of appeal but did not file a brief.

[3] In their briefs and at oral argument, neither Juarez nor Perez challenged the trial court's personal jurisdiction over him in the suit. *See Velasco v. Ayala*, 312 S.W.3d 783, 799 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (recognizing that a parent whose address is unknown and who has had an attorney ad litem file an answer on her behalf has waived her right to challenge defective service).

conviction" that the State's allegations are true, the evidence is factually sufficient. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *In re C.H.*, 89 S.W.3d at 25.

We review a trial court's conservatorship determination for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d at 616. We will not reverse the order unless the decision was arbitrary and unreasonable. *See id.*

**APPLICABLE LAW**

In her interview with a Department caseworker, Arguijo alleged that Juarez and Perez are the fathers of her children that are the subject of this suit. Each child was more than one year old when the Department filed its petition.

**A. Texas Family Code Provisions**

Under Title 5 of the Texas Family Code, "'[a]lleged father' means a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined." TEX. FAM. CODE ANN. § 101.0015(a) (West 2008); *accord In re H.C.S.*, 219 S.W.3d 33, 36 (Tex. App.—San Antonio 2006, no pet.).

If his child is over one year of age when the petition is filed, an alleged father's parental rights may be terminated to that child without "personal service of citation or citation by publication on [him], and there is no requirement to identify or locate [him if he] has not registered with the paternity registry under Chapter 160." TEX. FAM. CODE ANN. § 161.002 (West 2008); *see id.* § 160.404 (authorizing termination of an alleged father's parental rights if he "(1) did not timely register with the bureau of vital statistics; and (2) is not entitled to notice under Section 160.402 [("Registration for Notification")] or 161.002 [("Termination of the Rights of an Alleged Biological Father")]"); *In re C.M.D.*, 287 S.W.3d 510, 513 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also Lehr v. Robertson*, 463 U.S. 248, 265 (1983) ("The

Constitution does not require either a trial judge or a litigant to give special notice to [alleged fathers] who are presumptively capable of asserting and protecting their own rights.").

Generally, failure to comply with the paternity registration requirement because of ignorance of the law does not excuse noncompliance. *See Lehr*, 463 U.S. at 264; *Nguyen v. Kim*, 3 S.W.3d 146, 154 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *W. Columbia Nat'l Bank v. Griffith*, 902 S.W.2d 201, 206 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

However, "[a] man is entitled to notice of a [parental rights termination] proceeding . . . regardless of whether he registers with the registry of paternity *if* . . . a father-child relationship between the man and the child has been established." TEX. FAM. CODE ANN. § 160.402(b) (emphasis added); *cf. Lehr*, 463 U.S. at 261 (noting that constitutional protections apply to an unwed father who has a "developed parent-child relationship" with the child). *See generally* TEX. FAM. CODE ANN. § 160.201(b) (identifying ways a man may establish a father-child relationship).

The statutory presumptions to appoint a parent as a managing or possessory conservator do not apply to alleged fathers. *See In re C.M.C.*, 273 S.W.3d 862, 881 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (op. on reh'g); *In re S.C.L.*, 175 S.W.3d 555, 559 (Tex. App.—Dallas 2005, no pet.). *See generally Lehr*, 463 U.S. at 262 (opining that if an unwed father fails to develop an actual parent-child relationship, "the Federal Constitution will not automatically compel a state to listen to his opinion of where the child's best interests lie").

## B. Vienna Convention on Consular Relations Provisions

A Texas court may terminate an alleged father's parental rights even if he and his child are both foreign nationals if the proceeding complies with applicable treaty requirements. *See Arteaga v. Tex. Dep't of Protective & Regulatory Servs.*, 924 S.W.2d 756, 760–61 (Tex. App.—

Austin 1996, writ denied) (citing *In re Stephanie M.*, 867 P.2d 706, 709–12 (Cal. 1994) (terminating the parental rights of Mexican national parents to their Mexican national child where the parents and the child were living in California and the parents had participated in a family service plan to reunite the child with the parents)).

Under the Vienna Convention on Consular Relations (VCCR), the Department must notify the foreign consul of a parental termination proceeding affecting a foreign national child. *See* Vienna Convention on Consular Relations art. 37, Apr. 24, 1963, 21 U.S.T. 77 (requiring the receiving State "to inform the competent consular post without delay of any case where the appointment of a guardian or trustee appears to be in the interests of a minor or other person lacking full capacity *who is a national of the sending State*" (emphasis added)).

With such notice, the sending State's consul may act to "safeguard[], within the limits imposed by the laws and regulations of the receiving State, the interests of minors and other persons lacking full capacity *who are nationals of the sending State*, particularly where any guardianship or trusteeship is required with respect to such persons." Vienna Convention on Consular Relations art. 5(h), Apr. 24, 1963, 21 U.S.T. 77 (emphasis added).

However, the VCCR does not otherwise alter the receiving State's procedural or substantive laws controlling the matter. *See Arteaga*, 924 S.W.2d at 761 (approving *Stephanie M*'s authority-to-terminate analysis); *In re Stephanie M.*, 867 P.2d at 712 (referring to VCCR article 37 and noting that "the quoted language acknowledges the jurisdiction of the receiving state to apply its own laws to foreign nationals within its borders"). *See generally* Vienna Convention on Consular Relations art. 37, Apr. 24, 1963, 21 U.S.T. 77 ("The giving of this [notice] information shall, however, be *without prejudice to the operation of the laws and regulations of the receiving State* concerning such appointments." (emphasis added)).

## ANALYSIS

In their separate briefs, Juarez and Perez present exactly the same issues and arguments.[4] For brevity, this opinion refers only to Juarez, but except as noted, the issues, arguments, analysis, and conclusions apply equally to Juarez and Perez. Juarez presents five issues on appeal. He argues the first separately; he argues issues two through five jointly.

### A. Factual Insufficiency of Diligence in Search

In issue one, Juarez asserts that the evidence is factually insufficient to show that the Department exercised due diligence in attempting to locate him because the Department failed to comply with the VCCR. He complains that any search was limited to the United States and failed to include a search of any Mexican paternity registry. He notes that the Department failed to produce a copy of the Department's letter to the consulate or any response from the consulate. He cites *Arteaga* to show that the Department's efforts to locate him fell below the minimum level of effort necessary for diligence urged by *Arteaga*. *See Arteaga*, 924 S.W.2d at 761 n.6 (asserting that the State's notice letter to the Mexican consulate and the State's subsequent ten follow-up phone calls "constitute the bare minimum of acceptable notice to the Mexican consulate").

#### 1. Statutory Termination Provisions

Juarez cites Family Code section 161.107[5] to show that the Department was required to make a diligent search to locate him, but the statute does not apply under these facts. *See* TEX. FAM. CODE ANN. § 161.107 (requiring the Department to "make a diligent effort to locate [a

---

[4] Perez's brief—like Juarez's brief—refers solely and exclusively to R.J. as his child. Perez's brief asserts Perez is R.J.'s father, although the court adjudicated Juarez to be R.J.'s father. These incorrect references appear to be briefing errors.

[5] Juarez's brief cites section 161.007, but his argument makes it clear he intended to cite section 161.107.

missing] parent" but excluding from the definition of parent "a man who does not have a parent-child relationship established under Chapter 160").

For purposes of statutory analysis in this appeal, a parent is one "who has established a parent-child relationship under Section 160.201." *See id.* § 160.102. The record does not show, and Juarez does not assert, that he, with respect to any of Arguijo's children, had ever (1) married Arguijo, (2) acknowledged paternity, (3) been previously adjudicated to be the father, or (4) initiated or completed adoption proceedings. *See id.* § 160.201(b) (listing the ways a man can establish a parent-child relationship). The record also does not show that Juarez's name was listed on any of Arguijo's children's birth certificates. Further, Juarez did not register with the Texas paternity registry for any of the children who are the subject of this suit. Finally, when the petition for termination was filed, each child in the suit was over one year old. *See id.* § 161.002(c-1). Juarez was not a parent under the Family Code, and the Code did not require the Department to either serve Juarez, or to "identify or locate" him. *See id.*; *In re C.M.D.*, 287 S.W.3d 510, 513 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Juarez's argument that the evidence of diligent search was factually insufficient is overruled.

### 2. *Vienna Convention on Consular Relations*

Juarez also argues that the evidence was not factually sufficient because the Department did not demonstrate that it complied with the VCCR's article 37 requirement to give notice to the Mexican consulate. However, under the VCCR, the Department was required to notify the Mexican consulate of the parental termination suit only if the child that is the subject of the suit was a Mexican national. *See* Vienna Convention on Consular Relations art. 37, Apr. 24, 1963, 21 U.S.T. 77 (requiring notice "where the appointment of a guardian or trustee appears to be in the interests of a minor . . . *who is a national of the sending State*" (emphasis added)). Juarez

neither asserts, nor does the record show, that R.J. or any of the children were Mexican nationals. In fact, the record shows that E.P. and A.P. are United States citizens. With no evidence that any of the children were Mexican nationals, the Department had no obligation to notify the Mexican consulate of the suit. *See id.*

## B. Parental Presumption for Conservatorship

In issues two through five, Juarez argues that the Family Code and the United States Constitution require the court to award either managing or possessory conservatorship to him, and that the court abused its discretion when it awarded permanent managing conservatorship to the Department. *See* TEX. FAM. CODE ANN. § 153.131 (presumption for managing conservatorship); *id.* § 153.191 (presumption for possessory conservatorship). He asserts that there was no "negative evidence in regards to the parenting ability, abuse, or neglect by [him]," and therefore the trial court should have awarded him custody of R.J.

### 1. Constitutional Protections for Conservatorship

Juarez asserts he has a constitutional right to exclusive possession of his son, but "the mere existence of a biological link [with his child] does not merit equivalent constitutional protection" to that of a father who has "a developed parent-child relationship." *See Lehr*, 463 U.S. at 261; *see also In re J.W.T.*, 872 S.W.2d 189, 198 (Tex. 1994). Because the record does not show that Juarez ever developed a parent-child relationship with any of Arguijo's children, Juarez's constitutional argument fails. *See Lehr*, 463 U.S. at 261–62; *In re J.W.T.*, 872 S.W.2d at 197–98.

### 2. Statutory Protections for Conservatorship

Juarez contends that the trial court improperly ignored the Family Code's parental presumptions for conservatorship. *See* TEX. FAM. CODE ANN. §§ 153.131, .191. However, the

presumptions apply to a parent—as defined by the statute—and Juarez did not meet the statutory definition of a "parent." *See Lehr*, 463 U.S. at 261; TEX. FAM. CODE ANN. § 160.201. Therefore, Juarez was not entitled to the parental presumptions for conservatorship. *See In re C.M.C.*, 273 S.W.3d 862, 881 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (op. on reh'g).

## CONCLUSION

Considering the statutory provisions, constitutional protections, and treaty requirements, we conclude that the evidence was factually sufficient for a reasonable factfinder to form a firm belief or conviction that the State's allegations are true. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Further, we conclude that the trial court did not abuse its discretion by awarding conservatorship to the Department rather than Juarez or Perez. Therefore, we affirm the trial court's order terminating Juarez's, Perez's, and Arguijo's parental rights.

Rebecca Simmons, Justice