

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00046-CV
_____

IN THE INTEREST OF T.M.E., A.J.E., AND R.J.E., CHILDREN

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 14C0249-102

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

O P I N I O N

The Department of Family and Protective Services (the Department) filed a petition to terminate Aurelio Ron's[1] parental rights to his three children. The trial court granted the Department's petition and terminated Ron's parental rights following a bench trial establishing that Ron was a Mexican national living in Mexico. On appeal, Ron argues that he was never served with notice of the Department's suit against him. Because we agree, we reverse the trial court's judgment and remand the case for a new trial.

## I.    Factual and Procedural Background

This case began in 2013 when the Department initiated an investigation of the children's mother, Amber Kim. Kim informed Department caseworkers that Ron was voluntarily living in Mexico and was the father of all three children. As a result of Kim's drug tests that were positive for marihuana, the Department filed an original petition in 2014 to terminate Kim's and Ron's parental rights to their children. Although the Department filed an amended petition alleging grounds for termination against Kim only, on July 14, 2015, the trial court also terminated Ron's parental rights, even after finding that he was not notified of and did not appear at the final hearing. In fact, the Department had not served Ron with its petition.

As a result, on July 26, 2017, the Department filed a petition which asked the trial court to vacate its prior order terminating Ron's parental rights so it could consider its new request to terminate those rights. The Department's new petition, filed under the same cause number as prior proceedings which had resulted in the void order against Ron, alleged that Ron's address was

---

[1]We use pseudonyms for involved parties to protect the confidentiality of the children. *See* TEX. R. APP. P. 9.8.

"CARR ACAPULCO MEXICO SN, LOC ORGANOS DE J R ESCUDERO, ACAPULCO DE JUAREZ, GRO MEXICO 39901." It also attached an affidavit executed by April Hays, a Child Protective Services Supervisor, which stated:

> On June 6th 2016, I received contact from Juan Carlos Galicia Villanueva, representative of the Mexican Consulate, requesting information on the father's behalf. A copy of the termination order was sent to him on that date. At that time, I researched the case and discovered that the father had never been served and no pleadings of termination where [sic] contained in the petition for [Ron]. Later that month, Caseworker Chanda Zachery, [sic] received a letter from the father requesting an extension. The letter included an address and email address. Since that time, the Department has attempted to reach him through the contact information that he provided and he has not responded. He is a citizen of Mexico. At this time, his whereabouts are unknown and the Department has had no contact with him since the letter dated May 31st, 2016.

At a hearing held on July 27, 2017, the trial court found void its previous order and noted the Department's representations that it still had "not been able to locate [Ron] as of now."

The clerk's record established that the citation and petition were mailed from the clerk's office, twice to the wrong address. Initially, citation was mailed to "60S ORGANOS DE J R EDCUDERO 39901 ACAPULCO DE JUAREZ GRO" and was then sent to "CARR ACAPULCO MEXICO SN LOC ORGANOS DE J R ESCUDERO 39901 ACAPULCO DE JUAREZ GRO." In an August 16, 2017, status report, the Department stated that "[s]ervice ha[d] been sent to Mexico by certified mail from the clerk's office" and that it would "seek help from the Mexican consulate to locate" Ron. At an August 31, 2017, hearing, the trial court noted, "The father is in Mexico. We've tried numerous times to locate him and have him served. I hate to say, in all likelihood probably will not get him served, but we'll keep trying."

On September 24, 2017, Ron mailed a letter stating that he had received on August 1, 2017, "a judicial letter . . . [o]riginated from the state of Texas, with the cause number 14C0249-102, sent from the Department of Family Services and Protection [sic]" notifying him "of this situation that these minors are confronting," which was previously "unknown" to him. Because the unsigned, typewritten letter was addressed "[t]o whom [it] may concern" and contained no address for the addressee, it is unclear who received and filed Ron's letter.[2] Ron's letter stated that he was the father of the children and wished to be reunited with them, but was unable to do so as a result of his immigration status. Ron further stated that he was divorced from Kim, that the two had lost contact, that he was surprised to hear that the children were in a foster home, and that he was "available for any action that the jury assigns." Ron provided a telephone number and an incomplete address in the letter and asked that he be notified of "any procedure to take." Although the letter did not indicate that Ron had received the new citation and petition or had any knowledge that the Department sought to terminate his parental rights, this letter was labeled by the clerk as an answer to the Department's suit.

On October 10, 2017, the trial court found that Ron was not served with notice of a status hearing and had no counsel. Accordingly, the trial court appointed counsel for Ron. In its April 18,

---

[2]Although the letter contains the district clerk's date and time stamp, the envelope in which the letter was mailed is not a part of our appellate record. Accordingly, we do not know whether the letter was mailed directly to the district clerk or whether it was mailed to someone else who then filed it with the district clerk. Logically, in order to find that a defendant has answered a lawsuit, there must be (1) a writing containing sufficient information to constitute an answer and (2) proof that the defendant—or someone authorized to act on behalf of the defendant—presented the writing to the district clerk for filing in the clerk's record. It is both the content of the document and the act of filing the document with the district clerk that constitutes an answer. Consequently, in the absence of proof that Ron—or someone on his behalf—mailed the letter to the district clerk, the letter cannot be characterized as an answer to the lawsuit.

4

2018, permanency hearing order, the trial court found that Ron "ha[d] not been served in this cause, and therefore ha[d] not been notified." The court also found that "[t]he department ha[d] sent service paperwork to the Mexican consult [sic] for service on the father" and that "said papers [had] not been returned to the department." The record contains no return of service on file, shows that the citation and petition sent by the clerk's office were sent to the wrong address, and does not establish the addresses used by the Department in mailing any of its letters. The record also fails to contain any notices sent by the trial court informing Ron of the final hearing.

Ron did not appear at the final hearing. Referring to Ron's September 24 letter, the Department asked the trial court to "take judicial notice of the answer that was filed by [Ron]," which the court did.[3] Chanda Zachery, the Department's caseworker, testified that she tried to dial the telephone number provided by Ron in his letter, but that no one ever answered the phone. Zachery stated that she had not received any communication from Ron.

According to Zachery, the Department mailed the petition and family service plan to Ron by regular and certified mail and included contact information for Zachery and Ron's court-appointed counsel, yet there was no evidence demonstrating where the documents were mailed. Zachery said that the certified mail card was returned without a signature, but testified that Ron should have known of the Department's lawsuit because he had communicated via email. No further evidence of the substance or date of the email communication was provided. Zachery also testified that the Department mailed notice of the final hearing on an unidentified date to an

---

[3]Rule 201 of the Texas Rules of Evidence does not permit the trial court to take judicial notice of nonadjudicative facts. TEX. R. EVID. 201; *see In re E.W.*, 494 S.W.3d 287, 296 (Tex. App.—Texarkana 2015, no pet.). Thus, while the trial court may take notice of the existence of the letter, the court could not conclude that the letter was filed by Ron by judicial notice in the absence of any support in the appellate record that the letter was, in fact, filed by Ron.

unidentified address, but that the certified mail receipt was signed by someone other than Ron. April Hill, the Department's supervisor, testified that Ron had no contact with her. She further testified that the Department had moved its offices to a different building since Ron had contacted Zachery, but that the Department's telephone numbers remained the same.

On June 7, 2018, the trial court terminated Ron's parental rights on grounds D, F, N, and O of Section 161.001(b)(1) of the Texas Family Code after concluding that he had appeared through his court-appointed attorney.[4] On June 19, 2018, Ron's counsel filed a motion for new trial alleging that he had first made contact with Ron after the final hearing and that Ron did not receive notice of the final hearing until after it had occurred. The motion for new trial was denied.[5]

## II.    The Trial Court Did Not Obtain Personal Jurisdiction Over Ron

On appeal, Ron argues that the trial court erred in entering a final judgment because he was never properly served in accordance with the Hague Convention, judgment was entered without return of service of any kind, and he never received notice of the trial court's hearing, including the final hearing.[6] The Department does not directly address Ron's Hage Convention service

---

[4]Ron's counsel did not make a formal appearance or announce that he was ready for trial.

[5]According to Ron's counsel, Ron and Kim lived in Mexico until she was deported to the United States for overstaying her Mexican visa. Kim took the children, who were all born in Minnesota, with her after promising to assist Ron in obtaining legal entry into the United States. Ron claimed that Kim failed to assist him and lied to him about the children by claiming that all was well.

[6]Ron also argues that he was not served under the Vienna Convention on Consular Relations, which required the Department "to notify the foreign consul of a parental termination proceeding affecting a foreign national child." *In re R.J.*, 381 S.W.3d 619, 623 (Tex. App.—San Antonio 2012, no pet.) (citing Vienna Convention on Consular Relations art. 37, Apr. 24, 1963, 21 U.S.T. 77 (requiring the receiving State "to inform the competent consular post without delay of any case where the appointment of a guardian or trustee appears to be in the interests of a minor or other person lacking full capacity *who is a national of the sending State*" (emphasis added))). Because the record demonstrates that all three children were not Mexican nationals, the Vienna Convention on Consular Relations does not apply. *See id.* at 625 (holding that "the Department was required to notify the Mexican consulate of the parental termination suit only if the child that is the subject of the suit was a Mexican national").

6

claim. Instead, it argues that Ron's letter constituted an answer to the lawsuit, that he appeared through his court-appointed counsel, and that he had actual knowledge of the suit. We conclude (1) that Ron was not properly served, (2) that Ron's letter was not an answer, (3) that counsel's appearance at trial did not constitute a waiver of Ron's rights to be properly served in this case, and (4) that proper service was required even assuming that Ron had actual knowledge of the suit. Because the trial court entered judgment against Ron without proof of proper service, the judgment must be reversed.

### A. Personal Jurisdiction Over Ron Was Required

"Parental rights are 'far more precious than any property right,' and when the State initiates a termination proceeding, 'it seeks not merely to infringe that fundamental liberty interest, but to end it.'" *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)). "We carefully scrutinize termination proceedings, and we strictly construe involuntary termination statutes in the parent's favor." *Id.* (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). We keep in mind the heightened constitutional issues inherent to parental-rights termination cases in deciding this case.

"'[A]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action . . . .'" *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012) (quoting *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))). "[T]he '[f]ailure to give notice violates "the most rudimentary demands of due process of law."'" *Id*. (second alteration in

7

original) (quoting *Peralta*, 485 U.S. at 84) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965)).

"A claim of a defect in service of process challenges the trial court's personal jurisdiction over the defendant." *Livanos v. Livanos*, 333 S.W.3d 868, 874 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "[T]he United States Supreme Court held that 'a judgment entered without notice or service is constitutionally infirm,' and some form of attack must be available when defects in personal jurisdiction violate due process." *PNS Stores, Inc.*, 379 S.W.3d at 272–73 (quoting *Peralta*, 485 U.S. at 84). Ron's appeal constitutes a direct attack on the trial court's personal jurisdiction. *See id.* at 271. As such, the judgment must be vacated if "the court rendering judgment had no jurisdiction of the parties." *Id.* at 272. "Whether the trial court had personal jurisdiction over [Ron] is a question of law." *Milacron, Inc. v. Performance Rail Tie, L.P.*, 262 S.W.3d 872, 875 (Tex. App.—Texarkana 2008, no pet.) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

### B.    Ron Was Not Properly Served

"[T]he term 'service of process' has a well-established technical meaning. Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *In re J.P.L.*, 359 S.W.3d 695, 704 (Tex. App.—San Antonio 2011, pet. denied) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988)).[7] "Service of process on a defendant in Mexico is governed by . . . the Hague Service

---

[7]In Texas, service of process requires service of both the citation and a copy of the plaintiff's petition on the defendant. *See* TEX. R. CIV. P. 106. However, many of the Rules cited in this petition only refer to service of citation. Nevertheless, for purposes of this opinion, we use the phrases "service of citation" and "service of process" interchangeably.

Convention," which is a multinational treaty. *Id.* at 705 (citing *Velasco v. Ayala*, 312 S.W.3d 783, 792 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see* Hague Service Convention, November 15, 1965, arts. 2–5, 20 U.S.T. 361. "The United States ratified the treaty in 1969; Mexico acceded to the treaty on November 2, 1999, and it 'entered into force' in Mexico on June 1, 2000." *Velasco v. Ayala*, 312 S.W.3d 783, 972 (Tex. App.—Houston [1st Dist.] 2000, no pet.). "The Hague Service Convention applies 'in all cases, in civil or commercial matters, where there is an occasion to transmit a judicial or extrajudicial document for service abroad.'" *Id.* (quoting 20 U.S.T. 361, art. 1). "The purpose of the Hague Service Convention is 'not only to simplify and expedite international service of process, but more importantly, to ensure that service is effected timely and adequately." *J.P.L.*, 359 S.W.3d at 705 (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 383 (5th Cir. 2002), *arbrogated on other grounds by Water Splash, Inc. v. Menon*, 137 S.Ct. 1504, 1508 (2017)).

It is axiomatic that United States treaties are the supreme law of the land. *See* U.S. CONST. art. VI, cl. 2 (Supremacy Clause). For that reason, "[t]he United States Supreme Court has held that the Hague Service Convention 'pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies.'" *Ayala*, 312 S.W.3d at 973 (citing *Schlunk*, 486 U.S. at 699). "In addition, Texas courts have held that '[t]he Hague Convention preempts any inconsistent methods of service prescribed by Texas law in all cases where the Convention applies.'" *Id.* (quoting *Paradigm Entm't, Inc. v. Video Sys. Co.*, No. Civ.A. 3:99-CV-2004P, 2000 WL 251731, at *4 (N.D. Tex. Mar. 3, 2000)).

"The Hague Service Convention provides for service of process upon a person located in a signatory country through a 'Central Authority' designated by the country." *J.P.L.*, 359 S.W.3d at 705; *see Schlunk*, 486 U.S. at 698 ("The primary innovation of the Convention is that it requires each [country] to establish a central authority to receive request for service of documents from other countries." (alteration in orginal)). When the central authority "receives an appropriate request, it must serve the documents or arrange for their service . . . and then provide a certificate of service." *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504, 1508 (2017) (citations omitted). However, Article 10 of the Hague Convention also permits service through alternative means such as postal channels, provided the destination state does not object. *Id*.; *see J.P.L.*, 359 S.W.3d at 706. However, "when Mexico acceded to the Hague Convention, it filed its declarations objecting to all alternative channels of service." *Compass Bank v. Katz*, 287 F.R.D. 392, 396–97 (S.D. Tex. 2012). Therefore, under the Hague Service Convention, a Mexican national, like Ron, can be served in Mexico with a foreign proceeding only through the Central Authority of Mexico. *Id*.; *see also* Hague Service Convention, arts. 2–5; *J.P.L.*, 359 S.W.3d at 706–07; *Ayala*, 312 S.W.3d at 794; *Nuovo Pignone, SpA*, 310 F.3d at 383.

"Mexico has designated, as its Central Authority, the General Direction of Legal Affairs of the Ministry of Foreign Affairs, and Mexico requires that documents to be served . . . within its borders be in Spanish or accompanied by a corresponding translation." *Ayala*, 312 S.W.3d at 794; *see* HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, MEXICO – CENTRAL AUTHORITY & PRACTICAL INFORMATION, https://www.hcch.net/en/states/authorities/details3/?aid=267 (last visited October 30, 2018). "[J]urisdiction is dependent upon citation issued and served in a manner

10

provided for by law." *Id.* at 797 (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)). There is no evidence in the appellate record that Mexico's Central Authority was served with the Department's lawsuit. Further, there is no return of service in the record. Simply put, Ron was never properly served with the Department's lawsuit.

## C.  Ron's Letter Was Not an Answer

"When a defendant has not answered, the trial court acquires jurisdiction over the defendant solely on proof of proper service." *Livanos*, 333 S.W.3d at 874 (citing TEX. R. CIV. P. 107 ("prohibiting rendition of default judgment unless proof of proper service of process and return have been on file for ten days"); *Wilson*, 800 S.W.2d at 836); *see also* TEX. R. CIV. P. 121. The Department argues that proper service was not required because Ron's letter constituted an answer. However, in light of the unique procedural circumstances of this case, we conclude that Ron's letter cannot be construed as an answer to the Department's termination lawsuit.

"Texas courts have always been reluctant to uphold a default judgment without notice where some response from the defendant is found in the record." *Smith v. Lippmann*, 826 S.W.2d 137, 138 (Tex. 1992) (per curiam) (quoting *Santex Roofing Sheet Metal, Inc. v. Venture Steel, Inc.*, 737 S.W.2d 55, 56–57 (Tex. App.—San Antonio 1987, no writ)). Thus, "a defendant, who timely files a pro se answer by a signed letter that identifies the parties, the case, and the defendant's current address, has sufficiently appeared by answer and deserves notice of any subsequent proceedings in the case." *Id.* In *Lippmann*, the Texas Supreme Court found that a pro se signed letter mailed to the district clerk by Smith "acknowledging receipt and acceptance of . . . citation and petition" was sufficient to be considered an answer. *Id.*

11

The Department cites to *Lippmann* and several other Texas cases in support of its argument that Ron's letter constituted an answer. *Bell v. Citibank (So. Dakota) N.A.*, No. 06-06-00037-CV, 2006 WL 3091361, at *1, *3 n.2 (Tex. App.—Texarkana Nov. 2, 2006, no pet.) (mem. op.) (pro se defendant's filed response acknowledging receipt of citation and petition constituted an appearance by answer); *Terehkov v. Cruz*, 648 S.W.2d 441, 442 (Tex. App.—San Antonio 1983, no writ) (letter addressed to the district clerk which was signed by the defendant and recited that the citation was received by the defendant constituted an answer).

The letter filed in this case is easily distinguishable from the letters in the cases cited by the Department. First, while the letter contained a cause number and acknowledged receipt of "judicial letters" sent by the Department, nothing in the letter acknowledged receipt of the citation issued by the clerk, or otherwise indicated that Ron was aware that the Department was seeking to terminate his parental rights. Because the prior proceedings resulting in the trial court's original void order were conducted in the same cause, and because the letter does not state that Ron had received the citation or petition, it is entirely possible that the "judicial letters" received were related to prior proceedings. The typewritten letter was not signed by Ron, was not addressed to the clerk or the court, was in response to a letter sent by the Department, did not contain the addressee's address demonstrating where the letter was mailed, and failed to contain Ron's address.

We find that Ron's letter is more akin to the one we addressed in *In re S.K.A.*, 236 S.W.3d 875 (Tex. App.—Texarkana 2007, pet. denied). In that termination proceeding, the father mailed a letter to the district attorney which "identified the cause and style of the suit, expressed a desire

12

for contact with the children, and expressed a desire for future involvement in their lives." *Id.* at 895. There, we held that the pro se letter did not constitute an answer because there was no evidence that the father sent the letter to or filed it with the trial court. *Id.* In a similar case, our sister court concluded that, even though father filed a letter with the court stating a cause number and partial case style, father's letter was not an answer because it did "not provide an address for notice" or "respond directly to the allegations in the petition for termination" and, therefore, did "not meet the minimum *Lippmann* requirements to qualify as an answer." *In re J.P.*, 196 S.W.3d 434, 438 (Tex. App.—Dallas 2006, no pet.) (citing *Lippmann*, 826 S.W.2d at 138).[8]

---

[8]The Department argues that Ron waived service of process by filing an answer, but it supports its argument by reference to no-answer default judgment cases. Yet, whether a document constitutes an answer depends on whether the issue arises in a no-answer default context or in a waiver of service by answer context. In light of the drastic consequences of failing to answer, courts err on the side of liberally construing whether the defendant answered the lawsuit to prevent a no-answer default. *See Hock v. Salaices*, 982 S.W.2d 591, 594 (Tex. App.—San Antonio 1998, no pet.) ("Texas courts are willing to bend over backward to call something that is not an answer an answer to prevent inequity or injustice in the context of a default judgment.").

On the other hand, due process considerations require courts to strictly construe whether the defendant received—or waived—service of process. *See generally*, *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990) ("failure to affirmatively show strict compliance with the Rules of Civil Procedure renders the attempted service of process invalid and of no effect") (quoting *Uvalde Country Club v. Martin Linen Supply Co., Inc.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam) (holding that citation issued to Henry Bunting as defendant's registered agent was insufficient because the registered agent was actually Henry Bunting, Jr.)). Given this difference, it follows that no-answer default cases—which are subject to liberal construction—are not absolutely determinative of waiver of service by answer cases—which are subject to strict construction. This is particularly so in parental-rights termination cases which "should be strictly scrutinized . . . in favor of the parent." *In re K.D.*, 471 S.W.3d 147, 167 (Tex. App.—Texarkana 2015, no pet.) (quoting *Holick*, 685 S.W.2d at 20–21).

Yet, the cases identifying the minimum requirements for an answer in the default judgment context are not irrelevant to deciding whether a defendant has appeared by answer "so as to dispense with the necessity for the issuance or service of citation upon him." TEX. R. CIV. P. 121. Indeed, the factors identified in those cases are helpful to resolving the issue in both contexts. Nevertheless, those minimum requirements cannot be mindlessly applied to answers in deciding whether a defendant waived service of process by answer; rather, they must be evaluated in light of the unique due process considerations at issue in the personal jurisdiction context. *See generally*, *Hock*, 982 S.W.2d at 592 (noting that liberal construction of answers to avoid default "is proper because of the unfair outcome that can result from a default," but "to use these tortured constructions of an 'answer' for the purposes of moving forward to granting a summary judgment is inconsistent with the goals of summary judgment practice and the role summary judgments play in the orderly administration of justice").

13

For the reasons stated above, we find that Ron's letter was not an answer and that proof of proper service or waiver of service was required.

### D. Ron Did Not Waive Personal Service

"The plaintiff must affirmatively establish jurisdiction over the defendant by either a showing of an appearance or a showing of due service of citation independent of the recitals in the judgment." *Howmedica, Div. of Pfizer Hosp. Prods. Grp., Inc. v. Warren*, No. 05-92-01516-CV, 1993 WL 240056, at \*2 (Tex. App.—Dallas June 30, 1993, writ denied) (not designated for publication). We previously determined that Ron was not properly served with the Department's citation and petition. Citing to Texas Rules of Civil Procedure 120 and 124, the Department argues that Ron waived personal service by appearing through his court-appointed counsel. TEX. R. CIV. P. 120, 124. We disagree.

Rule 124 of the Texas Rules of Civil Procedure states, "In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant . . . ." TEX. R. CIV. P. 124. Rule 120 states, "The defendant may, in person, or by attorney, or by his duly authorized agent, enter an appearance in open court. Such appearance shall . . . have the same force and effect as if the citation had been duly issued and served as provided by law." TEX. R. CIV. P. 120. Yet, an enforceable waiver of the right to proper service of process must be executed "voluntarily, intelligently, and knowingly . . . with full

14

awareness of the legal consequences." [9] *In re M.M.S.*, No. 14-16-00349-CV, 2016 WL 6134456, at \*4 (Tex. App.—Houston [14th Dist.] Oct. 20, 2016, pet. denied) (mem. op.).

"[A] valid waiver of one's Hague Convention rights cannot occur without knowledge of the mandates of the Convention." *In re J.J.L.-P.*, 256 S.W.3d 363, 371 (Tex. App.—San Antonio 2008, no pet.). Due to the Hague Convention's supremacy and the strict scrutiny that we apply to involuntary termination proceedings, one of our sister courts has held void a judgment terminating parental rights when the parent was not served pursuant to the Hague Convention, even in light of an answer filed by the parent's attorney ad litem and appearance on the parent's behalf. *Ayala*, 312 S.W.3d at 789, 799. The Houston First Court of Appeals reasoned, "[B]ecause we have concluded that the trial court did not acquire personal jurisdiction over [the parent] at the commencement of suit, the subsequent actions of the trial court in authorizing the ad litem to represent her interests at trial, and everything that flowed therefrom, are likewise a nullity." *Id.*

Here, counsel never filed an answer on Ron's behalf, did not announce that he was ready to proceed with trial, and did not speak with Ron until after the final hearing. To hold that a parent—who never received service of process—entered a general appearance through his court-appointed counsel—whom he never talked to—and thereby made a general appearance that

---

[9]Section 102.0091 of the Texas Family Code sets forth the requirements of a waiver of service of process and states, in relevant part,

      (a)     A party to a suit under this title may waive the issuance or service of citation after the suit is filed by filing with the clerk of the court in which the suit is filed the waiver of the party acknowledging receipt of a copy of the filed petition.

      (b)     The party executing the waiver may not sign the waiver using a digitized signature.

      (c)     The waiver must contain the mailing address of the party executing the waiver.

      (d)     Notwithstanding Section 132.001, Civil Practice and Remedies Code, the waiver must be sworn before a notary public who is not an attorney in the suit.

TEX. FAM. CODE ANN. § 102.0091 (West Supp. 2018); *see also* TEX. R. CIV. P. 119.

negated the need to show service of process would create a bad precedent. By that reasoning, a parent could have his parental rights terminated in a proceeding he knew nothing about simply because the trial court appointed him an attorney. This would hardly satisfy the heightened due process standard applicable to parental-rights termination cases and would pay mere lip-service to the fundamental liberty interests at stake in such proceedings.

Thus, we adopt our sister court's reasoning and conclude that the actions of court-appointed counsel in this case cannot constitute valid voluntary, knowing, and intelligent waiver of Ron's Hague Convention rights. To borrow the Houston First Court of Appeals' holding in *Ayala*:

> [T]o hold that [Ron] is now precluded from challenging a void decree of . . . termination of h[is] parental rights pursuant to such state procedural rule or statute is to ignore that [the Department] failed at the outset to invoke the trial court's jurisdiction over [Ron] because [it] failed to serve h[im] under the terms of the Hague Service Convention, the provisions of which are mandatory, pre-emptive, and constitute "the supreme law of the Land" to which "the judges of every state shall be bound . . . *any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.*" U.S. CONST. art. VI, cl. 2

*Ayala*, 312 S.W.3d at 799–800 (citing *Schlunk,* 486 U.S. at 699).[10]

### E.     Knowledge of the Lawsuit Does Not Excuse Failure to Properly Serve Ron

Last, the Department argues that Ron's letter indicated that he had actual knowledge of the Department's lawsuit. We disagree with this contention because it could have been related to the

---

[10]Moreover, the result of this appeal would not be altered even if Ron's letter could have been construed to be an answer or appearance. This is because the record (1) fails to contain any notice of the final hearing sent by the trial court and (2) established that Ron had no timely notice of the final hearing. "A defendant who appears and files an answer in some form is entitled to notice of his trial setting." *J.P.*, 196 S.W.3d at 437 (citing TEX. R. CIV. P. 245). "A trial court's failure to comply with the rules of notice in a contested case deprives a party of the constitutional right to be present at the hearing, to voice her objections in an appropriate manner, and results in a violation of fundamental due process." *In re R.K.P.*, 417 S.W.3d 544, 551 (Tex. App.—El Paso 2013, no pet.). A post-answer default must be set aside when a party does not have notice of a trial setting as required by Rule 245. *Id.*; *In re A.L.R.*, No. 10-07-00037-CV, 2008 WL 3971762, at *2 (Tex. App.—Waco Aug. 27, 2008, no pet.) (mem. op.).

16

Department's prior proceedings, and the letter failed to indicate any understanding that Ron knew termination of his parental rights was at issue. Moreover, "'[f]or well over a century, this court has required that strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack.'" *In re T.J.T.*, 486 S.W.3d 675, 678 (Tex. App.—Texarkana 2006, no pet.) (quoting *Deutsche Bank Trust Co. v. Hall*, 400 S.W.3d 668, 670 (Tex. App.—Texarkana 2013, pet. denied) (quoting *Ins. Co. of State of Pa. v. Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009) (per curiam)). "Any deviation from the rules regarding proper service of process will result in the setting aside of a default judgment." *Id.* (quoting *Hall*, 400 S.W.3d at 670).

"Since this case involves a direct attack on a default judgment, the ordinary presumptions in support of valid service that are raised in a judgment addressed to the merits do not apply."[11] *Id.* (citing *Harmon Truck Lines, Inc. v. Steele*, 836 S.W.2d 262, 263 (Tex. App.—Texarkana 1992, writ dism'd)). "Failure to affirmatively show strict compliance with the rules . . . renders the attempted service invalid and of no effect." *Id.* at 678–79 (quoting *Steele*, 836 S.W.2d at 263). Thus, we have previously determined that, even if a father has admitted that he received notice of a Department's lawsuit by way of defective citation, "a default judgment is improper against a [father] who has not been served in strict compliance with the law, even if he has actual knowledge of the lawsuit." *Id.* at 679; *see Ayala*, 312 S.W.3d at 797; *see In re E.R.*, 385 S.W.3d 552, 567 (Tex. 2012) ("actual notice of ongoing proceedings cannot substitute for proper service").

---

[11]"In an attack upon a default judgment, a recitation of due service in the judgment does not lead to a presumption of due service." *Id.* at 680 n.2 (quoting *Kuykendall*, 436 S.W.3d at 814). "Instead, the plaintiff must 'prove that the defendant was served in the required manner.'" *Id.* (quoting *Kuykendall*, 436 S.W.3d at 814).

**III.    Conclusion**

Because the trial court never acquired personal jurisdiction over Ron, its order terminating Ron's parental rights to his three children is void. Accordingly, we reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.


Ralph K. Burgess
Justice


Date Submitted:    October 30, 2018
Date Decided:    November 7, 2018