

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00238-CV

_____

IN THE INTEREST OF J.G., A CHILD

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 21-6778-16

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

Appellant L.C. (Mother) brings this restricted appeal against Appellee J.G. (Father) regarding an order awarding Father sole managing conservatorship of their child J.G. (Janet).[1]  Mother contends that the evidence was legally insufficient to (1) support the entry of a post-answer default judgment, (2) show that she participated in the hearing that resulted in the final order, and (3) show that Father gave her notice of the hearing on his motion for default judgment.  We overrule all three issues.

Although not designated as an issue in Mother's brief, she also complains about the award of attorney's fees through trial.  Father concedes that he failed to prove up the award of both trial and appellate attorney's fees and, therefore, both should be vacated.  Based on Mother's complaint and Father's concession regarding the award of attorney's fees, we modify the trial court's order to vacate the award of both trial and appellate attorney's fees, and we affirm the order as modified.

## I.  BACKGROUND

Father filed in Texas on August 10, 2021, an "Original Petition in Suit Affecting the Parent–Child Relationship," and on August 24, 2021, he filed a supplemental petition.  The child who was the subject of the suit was nine-year old Janet.  Father acknowledged that Mother resided in South Carolina.  According to

---

[1]We use an alias to identify the child, and we identify family members by their relationship to her.  *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

Father's supporting affidavit, he and Mother were Janet's biological parents, but he did not assert that he and Mother had ever been married.

Regarding jurisdiction, Father alleged that "[n]o court ha[d] continuing jurisdiction of this suit or of the child the subject of this suit" and that "[t]his Court ha[d] jurisdiction of this matter under the Texas Family Code [S]ection 152.204." By relying on Section 152.204, Father was implicitly acknowledging that Texas was not Janet's home state[2] and expressly acknowledging that any jurisdiction that the trial court asserted would be based on a temporary emergency. *See* Tex. Fam. Code Ann. § 152.204(a), (b).[3] According to Father's affidavit, Janet had arrived in Texas about six weeks earlier, on July 1, 2021.

---

[2]Regarding a child's "home state," the Texas Family Code provides,

(7) "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or a person acting as a parent. A period of temporary absence of a parent or a person acting as a parent is part of the period.

Tex. Fam. Code Ann. § 152.102(7).

[3]In pertinent part, Section 152.204 provides,

§ 152.204. Temporary Emergency Jurisdiction

    (a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a

3

Within his petition, Father requested a temporary restraining order, temporary orders, temporary injunctions, and a permanent injunction. Thus, Father anticipated that the trial court's temporary emergency jurisdiction would eventually evolve into exclusive continuing jurisdiction. *See id.* § 152.202(b). Section 152.204 provides for temporary emergency jurisdiction becoming exclusive continuing jurisdiction under certain circumstances. *See id.* § 152.204(b).

Father's original petition was served on Mother on August 12, 2021, and the return of service was filed on August 16, 2021. Mother does not dispute that she was served on August 12, 2021. The citation warned Mother that a default judgment might be taken against her if she did not file an answer.[4]

---

sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 152.201 through 152.203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

Tex. Fam. Code Ann. § 152.204(a), (b).

[4]Specifically, the citation provided,

4

Mother was also served with a notice stating that the trial court had granted a temporary restraining order when Father presented his petition and that the trial court had set a hearing for 1:30 p.m. on August 23, 2021, at which Mother could "show cause why [the] injunction/restraining order should not be granted upon such Petition/Application effective until Final Order/Decree in such suit."[5]

Mother was also served with a notice of a hearing set for 1:30 p.m. on August 23, 2021, on Father's petition.

Twenty days after Father filed his original petition, on August 30, 2021, the trial court signed temporary orders. The trial court set out the case's procedural posture and substantively addressed Father's and Mother's conservatorship and rights of possession.

Procedurally, the order recites that on August 30, 2021, it heard Father's "motion for temporary orders," which contextually refers to Father's request for temporary orders in his petition, and within the order, the trial court twice indicates that it heard evidence. The order states that Mother, "although duly and properly

Notice to defendant: You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the first Monday following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

[5]The record does not contain a temporary restraining order, but the date set for the show cause hearing is consistent with the trial court's having signed a temporary restraining order. *See* Tex. R. Civ. P. 680 (providing that a temporary restraining order expires after fourteen days unless extended).

notified, did not appear and wholly made default." It further relates that "the Court has jurisdiction of this case and of all the parties per Texas Family Code [S]ection 152.204 and that there are no previous child custody determinations."

Substantively, the trial court (1) adjudicated Father as Janet's father, (2) appointed Father as Janet's temporary sole managing conservator, and (3) appointed Mother as Janet's temporary possessory conservator. But the order further provided that Mother was denied access to Janet until Mother could show that she was sober and healthy:

> The Court finds that credible evidence has been presented that there is a history or pattern of child neglect and substance abuse by [Mother] and a history or pattern of family violence by [Mother]. IT IS THEREFORE ORDERED that [Mother's] possession of and access to the child is DENIED until and unless [Mother] demonstrates she is sober and healthy, including but not limited to submitting to drug tests and the evaluations as ordered herein. IT IS ORDERED that [Father] shall have possession of and access to the child at all times.

The order concluded, "These Temporary Orders shall continue in force until further order of this Court."

About five months later, on January 24, 2022, Father filed a motion to enter a default judgment. Father asserted that Mother had been served with his original petition on August 12, 2021, and that the return of service had been filed on August 16, 2021. Father also related that the trial court had asserted temporary emergency jurisdiction under Section 152.204 of the Texas Family Code and signed temporary orders on August 30, 2021. Father then explained that Mother had not

6

filed any answer or pleadings or otherwise made an actual appearance but had made an ex parte communication with the court by email on or about September 30, 2021, and that the court administrator had forwarded the communication to Father's attorney. Because Janet had been in Texas at least six months, Father maintained that Texas was now her home state, and because Mother had not filed any suit in South Carolina, Father asserted that the trial court could make its temporary orders a final judgment.[6] Specifically, Father stated,

> 6. . . . As of the date of this Motion, a child custody proceeding has not been commenced in a court of a state having jurisdiction under [S]ections 152.201 through 152.203[,] and as of the date of this Motion,

---

[6]A child's home state is determined relative to the date that a suit is filed. *See* Tex. Fam. Code Ann. § 152.102(7). As discussed earlier, when Father filed his suit, Texas was not Janet's home state.

By January 24, 2022, because Janet had been living with Father in Texas for over six months, if Mother had not yet filed a suit in South Carolina, any suit she later filed in South Carolina would encounter the problem that, by then, South Carolina was no longer Janet's home state. *See id.* In contrast, if Father filed an original suit on January 24, 2022, or later, Texas would be considered Janet's home state.

Father's position was that although Texas was not Janet's home state when he filed his suit in August 2021, Texas was her home state by the time he filed his motion for default judgment on January 24, 2022 (without the necessity of having to dismiss his current suit and file a new petition under Section 252.201). *See id.* § 252.201 ("Initial Child Custody Jurisdiction"). Father contends that the temporary order under Section 252.204 becomes a final order under these circumstances. *See id.* § 252.204(b). Section 152.202(b) of the Texas Family Code is arguably consistent with Father's position: "A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 152.201." *Id.* § 152.202(b). One basis of jurisdiction under Section 152.201 is being the child's home state. *See id.* 152.201(a)(1).

the child the subject of this suit has resided in Texas for at least six months and Texas is now the home state of the child, the subject of this suit. Tex. Fam. Code § 154.204(b).

Father supported his motion for default judgment with an affidavit. In his affidavit, Father asserted that he had given "testimony at a temporary[-]orders hearing in this matter" on August 30, 2021. He also averred that there were "no court orders regarding custody, possession, or support," which, contextually, refers to out-of-state court orders.

Father's motion does not contain a certificate of service showing that he served Mother with a copy of his motion.

As noted earlier, Father acknowledged that Mother had emailed the court administrator on September 30, 2021. Father attached both Mother's email and the court administrator's email response to his motion.

Mother's email to the court administrator provided,

Hello [Court Administrator],

My name is [Mother,] and the case number is 21-6778-16. I live in South Carolina and have been unable to make the hearing and was hoping you could tell me what my next step should be. I work full time and have a home to maintain[,] so I would greatly appreciate knowing [what] my next move should be in Texas. [Janet] and I have lived in South Carolina for 5.6 years[,] and I was told by her father that she would be returned on July 30, yet I received papers and have been unable to afford an attorney[,] and [I had] no idea that [Father] was trying to take full custody of our child. He only showed up on her birthday[, . . . ] and [Janet] said she wanted to visit for the summer. She had done a great job in catching up on her reading[, so] instead of summer school, I allowed her to visit him and his family. I do not know what his family life is like[,] yet she and I do talk on the phone. Always supervised but I

8

don[']t want to disrupt her school or her year with her dad. I believed he and I were amicabl[y] co-parenting. He had dis[]appeared for 2 years[,] but when you love your daughter, you let her know her father[']s family too[] [r]egardless[] of his not providing for [Janet's] well[-]being all those years. I realize that was more information than needed. I had a hard year last year with family members becoming very ill[,] and I knew she should have a fun summer.

If you would please help me with some way I could keep my child happy, safe[,] and well[-]adjusted. She needs both her parents[,] and I will not sign his full custody papers.

> Sincerely,
> [Mother]
> [Telephone number]

Mother's email does not bear a file mark.

Also attached to Father's motion was the email that the court administrator sent to Mother and Father less than thirty minutes after Mother had sent her email; it provided,

> The Court is in receipt of your correspondence regarding the above-referenced cause. As a judge, Judge Shipman is charged by the Constitution and laws of the State of Texas to strictly follow the law. The law prohibits a judge from initiating, engaging in, and considering any form of communication which attempts to privately communicate information to the judge concerning a case other than through proper procedures. Those procedures require that every party to a legal proceeding shall be given fair notice of the content of the communication and an opportunity to be heard.
>
> Your correspondence constitutes an improper ex parte communication with the Court. Pursuant to Judicial Ethics Opinion No. 154, a copy of which is attached for your review, you are informed that such communication should cease, that Judge Shipman will take no action whatsoever in response to your letter, and that a copy of your email and this email has been sent to all opposing counsel and pro se litigants.

The 16th Court assures you that all pertinent information properly presented in this case will be considered. But Judge Shipman is bound by law to disregard any information communicated otherwise.

Thus, from the court administrator's perspective, Mother's email was an improper ex parte communication.

On January 25, 2022, the trial court signed an "Order in Suit Affecting the Parent–Child Relationship." The order recites that the court "heard this case[] by motion and submission" and that Mother, "although duly and properly notified, did not appear in this lawsuit and wholly made default." Father's attorney appeared, but Father himself did not. Thus, neither Father nor Mother could have testified.

Regarding jurisdiction, the order states,

The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction of this case and of all the parties per Texas Family Code [S]ection 152.204 and that there are no previous child custody determinations. The Court further finds that as of this date, a child custody proceeding has not been commenced in a court of a state having jurisdiction under [S]ections 152.201 through 152.203 and as of this date, the child the subject of this suit has resided in Texas for at least six months and Texas is now the home state of the child, the subject of this suit.

The order also states, "The record of testimony was duly reported by the court reporter for the 16th Judicial District Court, Denton County, Texas." Based on the face of the order, the trial court heard evidence.

The order then substantively tracks the temporary orders with a few exceptions. For example, the injunctions are designated as permanent rather than

temporary. And the final order contains party information, notices, and warnings required by the Texas Family Code; an award of attorney's fees to Father against Mother for both the trial and an appeal (if there was one); and a discharge from the discovery-retention requirement. *See* Tex. Fam. Code Ann. § 105.006 ("Contents of Final Order"). And, unlike the temporary orders, this order concludes with the clause: "IT IS ORDERED that all relief requested in this case and not expressly granted is denied."

Slightly less than six months later, on June 21, 2022, Mother filed her notice of restricted appeal. *See* Tex. R. App. P. 26.1(c), 30.

## II. LAW

To prevail in a restricted appeal, Mother must show that (1) she timely filed her notice of restricted appeal; (2) she was a party to the underlying suit; (3) she did not participate in the hearing that resulted in the complained-of judgment and did not timely file a postjudgment motion or request for findings of fact and conclusions of law or a notice of appeal within the time permitted by Rule 26.1(a); and (4) error is apparent from the face of the record. *See* Tex. R. App. P. 26.1(c), 30; *In re S.W.*, 614 S.W.3d 311, 313 (Tex. App.—Fort Worth 2020, no pet.). Father agrees that Mother meets the first three elements; he contends that she does not meet the fourth.

11

## III.  DISCUSSION

### A.  PRELIMINARY ISSUE

A preliminary issue that we must resolve is whether Mother filed an answer or made an appearance.  Whether Mother filed an answer or made an appearance impacts default-judgment procedure.  *See Sedona Pac. Hous. P'ship v. Ventura*, 408 S.W.3d 507, 511–12 (Tex. App.—El Paso 2013, no pet.) (setting out different types of default judgments).  Father contends that he took a no-answer default judgment and that Mother never made an appearance.  In contrast, Mother argues that her email to the court administrator constituted both an answer and an appearance.  We hold that Mother did not file an answer and did not make an appearance.

An answer must be filed.  *See* Tex. R. Civ. P. 21(a), 45, 239.  Admittedly, a letter that is not in "standard form" might qualify as an answer, but that is true only if the letter is filed.  *See Smith v. Lippmann*, 826 S.W.2d 137, 138 (Tex. 1992); *Aaron v. Fisher*, 645 S.W.3d 299, 311–12 (Tex. App.—Eastland 2022, no pet.); *Beard v. Uriostegui*, 426 S.W.3d 178, 181–82 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *In re K.B.A.*, 145 S.W.3d 685, 688, 691 (Tex. App.—Fort Worth 2004, no pet.); *Terehkov v. Cruz*, 648 S.W.2d 441, 442–43 (Tex. App.—San Antonio 1983, no writ).  *But cf. In re T.M.E.*, 565 S.W.3d 383, 388 n.2, 393 (Tex. App.—Texarkana 2018, no pet.) (holding that pro se father's letter filed in the trial court was not an answer because (1) the letter was not addressed to the court, (2) was in response to a letter sent by the Department of

Family and Protective Services, and (3) was potentially filed by someone other than the father). Mother's email was never filed in the trial court. But for Father's motion, which attached Mother's email as an exhibit, the record would not have disclosed the email's existence.

And, although true that pleadings may be filed electronically, *see Rhojo Enters., LLC v. Stevens*, 540 S.W.3d 621, 624–26 (Tex. App.—Beaumont 2018, no pet.), emailing a court and efiling a document are different processes. To efile a document, parties must go to a website designed to perform just that function. *See* eFileTexas, https://efile.txcourts.gov (last vistited Feb. 10, 2023); *see also Rhojo Enters., LLC*, 540 S.W.3d at 625 (noting that efiling requires registering). Mother's email does not suggest that she was trying to file anything. Her email was the functional equivalent of a telephone call.

Similarly, Mother's email does not constitute an appearance. An appearance must be in open court, and the trial court has to recognize that the party has, in fact, appeared by noting the appearance on the court's docket and entering the appearance in the court's minutes. *See* Tex. R. Civ. P. 120.

Over a century ago, a Texas court recognized that merely interacting with court personnel is insufficient to constitute an appearance. *See Stevens v. Perrin*, 47 S.W. 802, 803 (Tex. App.—Fort Worth 1898, no writ).[7] In that case, the court wrote, "A

---

[7]The opinion does not indicate which appellate court authored *Stevens*, but it does indicate that the appeal originated out of Floyd County. *Id.* at 802. In 1898,

statement by an attorney in the clerk's presence that he represents a party litigant, with a probable request . . . that his name be entered upon the docket as the attorney for the party, cannot, it seems to us, constitute such an appearance as is contemplated by law." *Id.* The court added, "We hence deduce that, in the absence of pleadings filed or of an appearance in open court entered upon the minutes thereof, it would be unsafe and unwise to hold parties responsible for an appearance in courts of record upon such vague and uncertain conditions as those here disclosed." *Id.*; *see Jonsson v. Rand Racing, L.L.C.*, 270 S.W.3d 320, 325 (Tex. App.—Dallas 2008, no pet.) ("[W]e cannot conclude that a notation on the docket sheet alleging appellee called the court the day before a conference 'disputing claim' as evidence of a general appearance."); *Moore v. Elektro-Mobil Technik GmbH*, 874 S.W.2d 324, 327 (Tex. App.—El Paso 1994, writ denied) (noting that correspondence does not always constitute an appearance).

Accordingly, we hold that Father took a default judgment after Mother failed to answer and failed to appear.

### B. WHETHER THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE ENTRY OF THE DEFAULT JUDGMENT

Mother contends that because she answered and appeared, Father had to present evidence at the hearing on his motion for default judgment and could not take

---

Floyd County fell within the jurisdiction of the Fort Worth Court of Civil Appeals. *See* Act approved May 13, 1893, 23rd Leg., R.S., ch. 116, § 8, 1893 Tex. Gen. Laws 171, 172, *reprinted in* 10 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 601, 602 (Austin, Gammel Book Co. 1898).

a default judgment based on Mother's having admitted the allegations in his petition by failing to answer or appear.

The standards governing no-answer and postanswer default judgments differ significantly. *Rouhana v. Ramirez*, 556 S.W.3d 472, 476 (Tex. App.—El Paso 2018, no pet.). For a no-answer default judgment, courts deem the nonanswering party to have admitted all the facts properly pleaded in the petition. *Id.* at 476–77. But, for a postanswer default judgment, the party's failure to appear at trial does not constitute an abandonment of its answer and is not an implied confession on any issues that its answer contested. *Id.* at 477. Consequently, when a plaintiff takes a postanswer default, it must offer evidence and prove its case on any contested issue as in a trial. *Id.* The plaintiff cannot take a judgment on the pleadings themselves. *Id.*

In Mother's case, we have already determined that she did not file an answer. Normally that would mean that she admitted the allegations in Father's petition and that Father could, therefore, obtain a default judgment on his pleadings alone. *See id.* at 476–77.

But, when conservatorship of children is involved, the same rules may not apply, and notwithstanding Mother's failure to answer, Father may have had to present evidence. In other no-answer contexts involving family-law matters, plaintiffs are required to present evidence. For example, "[i]n a suit for divorce, the petition may not be taken as confessed if the respondent does not file an answer." Tex. Fam. Code Ann. § 6.701. The same is true in a modification proceeding. *See Agraz v.*

*Carnley*, 143 S.W.3d 547, 553 (Tex. App.—Dallas 2004, no pet.); *Considine v. Considine*, 726 S.W.2d 253, 254 (Tex. App.—Austin 1987, no writ). And, in a case involving the termination of parental rights, a parent's failure to answer is not taken as an admission of the termination petition's allegations. *See Williams v. Williams*, 150 S.W.3d 436, 446–47 (Tex. App.—Austin 2004, pet. denied); *see also In re A.S.*, 241 S.W.3d 661, 664 (Tex. App.—Texarkana 2007, no pet.) (citing *Williams*, 150 S.W.3d at 447).

Here, however, we do not have to resolve that issue because the trial court's January 25, 2022 order indicates that it heard evidence and that the court reporter was present to take down the testimony. We presume that recitals in a judgment are true unless there is a conflict between the judgment and the record, in which case the presumption is rebutted. *M.B. v. R.B.*, No. 02-19-00342-CV, 2021 WL 2252792, at *4 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.) (citing *Alcantar v. Okla. Nat'l Bank*, 47 S.W.3d 815, 823 (Tex. App.—Fort Worth 2001, no pet.)).

Because the trial court's order recites that the court heard evidence, and because we presume that recital to be true absent the record showing the contrary, Mother needs the reporter's record to rebut the recital. Yet Mother has not filed the reporter's record of the hearing that produced the January 25, 2022 order. When a reporter's record exists but is not requested or paid for, the reviewing court "must presume there was evidence to support . . . the trial court's judgment." *Patrick v. Watson*, No. 2-07-075-CV, 2008 WL 2854656, at *1 (Tex. App.—Fort Worth July 24, 2008, no pet.) (per curiam) (mem. op.) (citing *Bryant v. United Shortline, Inc. Assurance*

16

*Servs.*, 972 S.W.2d 26, 31 (Tex. 1998)); *see* Tex. R. App. P. 37.3(c). In a restricted appeal, a party can challenge the sufficiency of the evidence, but if no reporter's record has been provided to the reviewing court, the party is restricted to errors appearing on the face of the clerk's record. *See Quezada v. Quezada*, No. 07-15-00313-CV, 2016 WL 3694827, at *2 (Tex. App.—Amarillo July 11, 2016, no pet.) (mem. op.).

In Father's brief, he asserts that he never asked for a trial or a hearing and that the trial court rendered the January 25, 2022, order "on submission." Father argues that under Section 152.204, the trial court simply made the temporary order final, which, according to Father, required neither a hearing nor a trial.

While we recognize that Section 152.204 anticipates a temporary order becoming a final one, it does not set out the procedural mechanism for doing so. *See* Tex. Fam. Code Ann. § 152.204(b). To make the temporary order under Section 152.204 final, we would anticipate—at the very least—that the trial court would need some evidence showing that no other state had exclusive continuing jurisdiction and that no other state qualified as the child's home state. For example, in the present case, the trial court would have needed evidence that after Father filed his petition in Texas, Mother did not and could no longer successfully file a petition in South Carolina because South Carolina was no longer Janet's home state. Another example is the trial court's award of attorney's fees. The January 25, 2022 order awards Father $10,000 in attorney's fees through trial and another $10,000 in attorney's fees to

17

Father in the event that he had to defend an appeal. Those awards would require evidentiary support.

Under the presumption of regularity, we are required to presume recitations in the final judgment are correct absent any evidence to the contrary. *Vernon v. Perrien*, 390 S.W.3d 47, 58 (Tex. App.—El Paso 2012, pet. denied); *S. Ins. Co. v. Brewster*, 249 S.W.3d 6, 12–14 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Because the appellate record does not include a reporter's record, nothing contradicts the recitations, so we take them as true. *See Sandoval v. Comm'n for Lawyer Discipline*, 25 S.W.3d 720, 722 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Thus, we conclude that the trial court conducted an evidentiary hearing and that the evidence supports the judgment. *See Sedona Pac. Hous. P'ship*, 408 S.W.3d at 511.

We overrule Mother's first issue.

### C. WHETHER THE EVIDENCE WAS SUFFICIENT TO SHOW THAT MOTHER PARTICIPATED IN THE HEARING RESULTING IN THE FINAL ORDER

In Mother's second issue, she contends that the evidence is insufficient to show that she participated in the hearing that resulted in the final order. Father does not contest the fact that Mother did not participate in the trial. The trial court's order affirmatively states that Mother "did not appear" and "wholly made default." There is thus no error to correct; the trial court's order already reflects that Mother did not participate in the trial. Not participating in the trial, however, is but one of several elements that Mother must show. *See* Tex. R. App. P. 30.

18

Because this issue is not independently dispositive, we overrule Mother's second issue as moot. *See Lien Kim Luu v. Rice*, No. 02-14-00326-CV, 2015 WL 4599377, at *2 (Tex. App.—Fort Worth July 30, 2015, no pet.) (mem. op.).

### D. WHETHER THE EVIDENCE WAS SUFFICIENT TO SHOW THAT FATHER GAVE MOTHER NOTICE OF THE DEFAULT-JUDGMENT HEARING

Mother's third contention is that the evidence is insufficient to show that Father gave her notice of the default-judgment hearing. Mother contends that she was entitled to notice because she answered and appeared before Father took a default judgment. But we have determined that Mother neither filed an answer nor made an appearance. Because Mother neither answered nor appeared, she was not entitled to notice. *See Sedona Pac. Hous. P'ship*, 408 S.W.3d at 511–12; *In re Marriage of Collins*, 870 S.W.2d 682, 683 (Tex. App.—Amarillo 1994, writ denied). "The law imposes no duty on the plaintiff to notify a defendant before taking a default judgment when [the defendant] has been served properly with the citation and petition[] and nonetheless has failed to answer or otherwise appear." *Wilson v. Wilson*, 132 S.W.3d 533, 536 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

We overrule Mother's third issue.

### E. ATTORNEY'S FEES

Within Mother's brief, she complains about the award of attorney's fees through trial. Her complaint is not designated as a separate issue, and it is not briefed.

19

Nevertheless, in Father's brief, he concedes that not only was the award of attorney's fees through trial erroneous, but he also acknowledges that the award of appellate attorney's fees was erroneous as well: "Because Father did not prove up the attorney's fees or appellate attorney's fees, Father agrees to strike those fees, and this Court should affirm as modified." In the prayer to Father's brief, he confirms that he wants both awards of attorney's fees struck: "Father agrees to strike the attorney's fees and appellate fees from the judgment. Father prays this Court will affirm the trial court's judgment as modified."

Although we do not have the reporter's record to confirm Father's concessions, we are not inclined to deny Mother this relief when Father admits—against his own interest—that she is entitled to it. *See generally Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) ("[A] party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as 'the invited error' doctrine."). Consistent with Mother's complaint and Father's prayer, we vacate both awards of attorney's fees.

## IV. CONCLUSION

We overrule Mother's three issues. Based on Mother's complaint and Father's concessions regarding attorney's fees, we modify the judgment to vacate the awards of $10,000 in attorney's fees through trial and of $10,000 in attorney's fees for the appeal. We affirm the trial court's order as modified.

20

/s/ Brian Walker

Brian Walker
Justice

Delivered:  February 23, 2023